## State Highway Commission of Kentucky v. King et al.

(Decided May 14, 1935.)

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellant.

COLEMAN TAYLOR, JOSEPH S. LAURENT and J. VERSER CONNER for appellant Liter Donaldson.

LESLIE W. MORRIS for appellee J. J. King.

WILSON W. WYATT, WILLIAM H. CRUTCHER, Jr., and PETER, HEYBURN, MARSHALL & WYATT and D. L. HAZEL-RIGG for appellees Louisville Courier Journal Co. and the Louisville Times Co.

CARY, MILLER & KIRK amici curiæ.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

The General Assembly of Kentucky at its regular 1928 session passed an act known as the Murphy Toll Bridge Act which authorized and empowered the state highway commission as agent of the commonwealth of Kentucky to build, acquire, and own interstate and intrastate bridges on the state primary system of highways. Acts of 1928, c. 172, Ky. Stats., secs. 4356s-1 to 4356s-15, inclusive.

Section 4 of the Act (Ky. Stats., sec. 4356s-4), after authorizing the highway commission to issue bonds for the purpose of obtaining funds with which to build or acquire bridges in such amounts and bearing such rate of interest, not exceeding 6 per centum per annum, as might be deemed best by the commission, contained this provision:

"The payment of said bonds, together with the interest thereon, shall be secured by a first lien on all tolls collected on said bridge or bridges, and also by a first lien on such bridge or bridges, its approaches and all real estate appurtenant thereto. The payment of no bond or interest thereon authorized by this act shall be an obligation of the Commonwealth of Kentucky; nor shall any bond be payable out of any fund except such as may be derived from toll bridges."

Section 6 of the act (Ky. Stats. sec. 4356s-6) empowered the commission to charge and collect tolls and fix the rates thereof for such length of time as in its opinion would be sufficient to pay off such bonds and interest thereon.

Section 7 (Ky. Stats. sec. 4356s-7) provided that if any bonded indebtedness or lien should have been fully paid or discharged on account of any bridge or bridges built or acquired under the provisions of the act, only such toll as might be deemed necessary by the commission to pay the cost of some extraordinary casualty or calamity should be charged or collected.

Section 10 (Ky. Stats. sec. 4356s-10) provided that the bonds should be sold to the highest and best bidder.

The 1928 act was held to be constitutional in Bloxton v. State Highway Commission, 225 Ky. 324, 8 S. W. (2d) 392.

The General Assembly at its 1930 session passed an act which abolished the lien created by the 1928 act on the bridges themselves, and made certain other changes in respect of the authority and power of the state highway commission in issuing bridge revenue bonds, which will be noted later in this opinion. Acts of 1930, c. 157, Ky. Stats. Supp. 1933, secs. 4356s-16 to 4356s-38, inclusive. The 1930 act was held to be constitutional in Estes v. State Highway Commission, 235 Ky. 86, 29 S. W. (2d) 583, 585.

Pursuant to the provisions of these two acts, the state highway commission issued and sold $9,692,000 of bridge revenue bonds. The bonds were dated July 1, 1930, and bear interest at the rate of 4½ per centum per annum. The bonds were issued under four indentures known as projects 1, 2, 3, and 8. The bonds under projects 1, 2, and 3 mature July 1, 1950, and those under project 8 mature July 1, 1945. Bonds of the par value of $1,744,000 have been retired leaving outstanding bridge revenue bonds in the sum of $7,948,000. Sufficient funds will be available on July 1, 1935, to reduce the principal amount of the outstanding bonds to $7,-722,000.

Conceiving that the present was an opportune time to refund this indebtedness at a lower interest rate on account of the favorable condition of the bond market, the state highway commission on March 12, 1935, declared its intention to refinance all outstanding bridge revenue bonds by issuing and selling bridge revenue refunding bonds at a lower rate of interest. A "Notice of Sale" dated March 14, 1935, was approved by the commission. This notice reads in part:

"The State Highway Commission of Kentucky at a public meeting of the Commission to be held in its office at Frankfort, Kentucky on the 9th day of April, 1935 at 11 o'clock A. M. will receive and open sealed competitive proposals for the purchase of bonds to be issued and sold by said Commission to provide funds for redeeming in whole or in part bridge revenue 4½% bonds of the Commonwealth of Kentucky which were issued for bridge projects

numbers 1, 2, 3, and 8. * * * Each bidder must set forth in his proposal the terms and conditions under which the refunding bonds bid for are to be issued and the proposal will be accepted which the Commission in its prudence may deem for the best interests of the Commonwealth.''

On April 9, 1935, two bids were submitted, one by a syndicate of bond dealers headed by C. W. McNear & Co., and the other, by a syndicate headed by Blythe & Co. The syndicate headed by Blythe & Co. proposed to buy approximately 75 per cent. of the bonds at an interest rate of 4 per cent., and the remainder at an interest rate of 3¼ per cent. Under this bid the refunding of the bonds would result in a saving of $422,000. The syndicate headed by McNear & Co. proposed to pay par for the refunding bonds approximately 70 per cent. of which were to bear interest at the rate of 3¼ per cent. and the remainder at 3 3/4 per cent. The refunding of the bonds under this bid would result in a saving of $1,031,000. The proposal submitted by the syndicate headed by McNear & Co. contained these provisions:

''All of said bonds are to be dated July 1, 1935, bearing interest at rates as hereinbefore specified, payable semi-annually on January 1, and July 1 of each year, both principal and interest to be payable in lawful money of the United States of America at the office of the State Treasurer in the City of Frankfort, Kentucky, or, at the option of the holder of the bonds, at a bank in the City of New York, as may be selected by the Commission. All of said bonds are to be secured in the same manner and with the same covenants as the bonds which are to be retired except to the extent same are not pertinent to the refinancing program. It is agreed that the Attorney General of Kentucky representing the Commission and our counsel, Chapman and Cutler, of Chicago, Illinois, are to determine the pertinency or nonpertinency of any covenant to support the refunding bonds, and all proceedings for the issuance of the refunding bonds are to be carried out under their joint supervision. It is further conditioned that such proceedings shall contain provisions that in the event there should at any time be a deficiency in bridge revenues for the payment of

the interest on or principal of said refunding bonds as the same become due there shall be advanced from any other available funds under the control of the Kentucky State Highway Commission such amounts as may be necessary to cover any such deficiency and that there shall be reimbursements of the amount of any such advancements whenever the bridge revenues from the project shall have accumulated sufficiently so to do and leave a balance of not less than the amount of principal and interest coming due within the next succeeding twelve months on the bonds then outstanding. In the event such other funds are not available to make such advancements for such purposes, the Kentucky State Highway Commission shall include, in its next biennial budget of the State Road Fund, such appropriations as may be necessary to cover such deficiency and in addition thereto to set up a contingent fund which shall be maintained and from which such further advancement shall be made as may from time to time be necessary for the payment of the interest on or principal of said refunding bonds as the same become due. Such contingent fund to be reimbursed in the amount equal to any such advancements as hereinbefore provided.''

The commission accepted the bid submitted by the syndicate headed by McNear & Co.

On April 16, 1935, J. J. King, a taxpayer, filed this suit in the Franklin circuit court under the Declaratory Judgment Act (secs. 639a-1 to 639a-12, Civil Code of Practice) against the state highway commission seeking a declaration of rights with respect to the authority of the state highway commission (1) to issue and sell bridge revenue refunding bonds for the purpose of retiring all outstanding bridge revenue bonds; (2) in the event there should at any time be a deficiency in bridge revenues for the payment of the interest on or principal of the refunding bonds as the same become due, to advance from any other available funds under the control of the highway commission such amounts as may be necessary to cover such deficiencies, and in the event such other funds are not available to set up and maintain a contingent fund to meet future deficiencies; (3) to

issue temporary bridge revenue refunding bonds dated July 1, 1935. The plaintiff also sought to have the McNear contract declared invalid.

The Louisville Courier Journal Company and the Louisville Times Company filed an intervening petition as taxpayers on their own behalf and on behalf of all other taxpayers of the commonwealth of Kentucky challenging the validity of the McNear contract. The interveners conceded the power of the commission to refund the bridge revenue bonds, but asserted that the McNear contract is invalid because it violates various statutory provisions as well as sections 49 and 50 of the Constitution, and because the "Notice of Sale" failed to stipulate the terms and conditions upon which the bidding should be made, and that consequently the bidding was not competitive as required by law. Demurrers to the petition and intervening petition were overruled.

In paragraphs 2 and 3 of the answer filed by the state highway commission it was alleged that neither the highway commission nor McNear & Co. construed any of the language contained in the contract as imposing a direct burden or obligation upon the general fund under the control of the commission. A demurrer to paragraphs 2 and 3 of the answer was sustained, and a judgment was entered declaring the rights of the parties in substance as follows:

(1) The state highway commission of Kentucky has the power and authority to issue bridge revenue refunding bonds for the purpose of retiring the outstanding bridge revenue bonds, provided that such refunding bonds shall be secured in the same manner and with the same covenants as the bonds which are to be refunded.

(2) The McNear contract is invalid for the reason that the provision therein requiring the state highway commission to advance sufficient money out of the general fund to meet any deficiency in the payment of interest or principal of the bonds constitutes a direct burden upon the general fund of the commonwealth of Kentucky.

(3) The state highway commission may issue temporary bridge revenue refunding bonds or definitive bonds dated July 1, 1935.

(4) The McNear contract does not violate the Act of Congress approved June 18, 1930 (46 Stat. 778), which authorizes the commonwealth of Kentucky by and through its highway commission to acquire, maintain, and operate interstate toll bridges, and which provides that the tolls on such bridges must be so adjusted as to amortize the cost thereof within a period not exceeding twenty years from the date of the approval of the act.

(5) The McNear contract is not invalid because of any defects in the "Notice of Sale" or in the type of bidding requested pursuant thereto.

The state highway commission has appealed from so much of the judgment as holds that the McNear contract is void for the reason that it makes the bridge revenue refunding bonds to be issued thereunder a direct obligation of the commonwealth, and J. J. King and the intervening petitioners prosecute a cross-appeal on the questions decided adversely to their contentions.

The right of the highway commission to issue bridge revenue refunding bonds is not seriously challenged. Although there is no specific statutory authority for such procedure, the commission clearly has the implied power to issue and sell refunding bonds. The act creating the highway commission vests it with broad powers, and the toll bridge acts of 1928 and 1930 imposed upon the commission the duty to operate and control the bridges built or purchased under the provisions of the acts in such a manner as to pay off the indebtedness at the earliest possible date, and thus to free them to the use of the traveling public. This clearly expressed purpose runs through these acts, and it was evidently the intention of the Legislature to make it the duty of the commission in the exercise of its sound discretion to operate and maintain the bridges, fix the toll rates, and finance the costs so as to accomplish the primary object of the Legislature, to wit, the acquirement of bridges free of tolls as a part of the state primary system of highways at the earliest possible date. The implied power to refund outstanding bonds at a lower interest rate and thus, in effect, to reduce the indebtedness is a necessary incident of the powers expressly conferred in view of the purpose of the toll bridge acts. In Estes v. State Highway Commission, supra, where these acts were under consideration, the court, in referring to the act of 1928, said:

"The purpose of that act was to confer power upon the state highway commission to enter upon a plan of constructing bridges connecting and making more convenient to the traveling public the primary roads of the state and connecting the primary roads of this state with main highways in other states. A reading of that chapter shows that the main idea running all through it is that the state highway commission may sell bonds to obtain the necessary funds to construct such bridges and, as security for the payment of the bonds so issued, may pledge the tolls received from such bridges as security. Consonant with that main idea, the state highway commission as an administrative body was given authority to do all such things as might be found necessary within the limits of the act, and other laws on the subject, to carry into effect the purposes so expressed. The state highway commission was given wide discretion in the administration of the act, but its main purpose was clearly expressed and may not be materially departed from."

Further along in the opinion, it was said:

"The state highway commission, when all of the acts relating to it are considered, has broad powers and duties and it is authorized to do and cause to be done all things necessary to construct and maintain the system of primary roads, and where there is no provision of law covering any necessary thing to be done in the construction and maintenance of roads it is given authority to do, or cause to be done, such necessary things in the way and manner best calculated, in the judgment of the commission, to accomplish the necessary objects."

The appellant argues that aside from its implied power it has definite authority to refund the outstanding indebtedness when it can do so to the advantage of the traveling public who use the toll bridges constructed by it, since specific authority has been vested in the commission to issue and sell bridge revenue bonds, and many authorities are cited in support of its contention. We deem it unnecessary to express our views on this question, since we have concluded that the highway commission at least has the implied power, in the circumstances, to issue refunding bonds, and the circuit court correctly so held. The decision of the state high-

way commission to refund the outstanding indebtedness at a lower interest rate was a wise exercise of its discretion in the matter in view of the present favorable condition of the bond market, and was in thorough accord with the spirit and purpose of the toll bridge acts. The legality of the steps taken remains to be determined.

The circuit court held that the contract between McNear & Co. and the state highway commission was invalid because the provisions in the contract heretofore quoted pledged the credit of the commission, an agency of the commonwealth of Kentucky, behind the proposed refunding bonds. This ruling was correct. Section 4 of the Act of 1928, now section 4356s-4 of the Kentucky Statutes, specifically provides that all bonds shall be payable only out of funds derived from toll bridges, and forbids their payment out of any other fund. The act of 1930, known as the Clark Toll Bridge Act, changed some of the provisions of the act of 1928, but in it the Legislature again manifested its intention to require the principal of and interest on the bridge revenue bonds to be paid solely out of revenues derived from the bridges. The opinions in the Bloxton and Estes cases recognized the inhibitions contained in these two acts. The contract not only violates the plain provisions of the toll bridge acts, but it contravenes sections 49 and 50 of our Constitution which forbid the General Assembly from contracting debts in excess of $500,000 without a submission of the question to the direct vote of the people. It is argued that the contract only obligated the state highway commission to advance from available funds under its control such amounts as may be necessary to cover any deficiency in bridge revenues for the payment of the interest on or principal of refunding bonds as the same become due, and, as such advancements are to be repaid from tolls, no indebtedness payable from the general fund in violation of the Constitution is created. The contract is clearly intended to obligate the commission to advance a sufficient amount from its general fund to meet payments due on the principal and interest of the bridge revenue bonds when the bridge revenues are insufficient for that purpose and, in the event the commission has no available fund for such advancements, to obligate it to include in its next biennial budget of the state road fund such appropriation as may be necessary to cover such deficiency and, in addition thereto, to set up a contingent fund to cover

future deficiencies. In view of the history of the bridges since their construction and the amount of revenue that has been derived during a period of business depression the probability that the revenues at any time will be insufficient to meet the payments on the bonds as they fall due, and that the obligation of the commission to make advancements from its general fund will mature, is remote and unlikely, but the legal possibility of such a contingency exists. Consequently, the obligation to make the advancement constitutes a contingent liability to the full amount of the bonds.

On April 17, 1935, C. W. McNear & Co. wrote a letter to the state highway commission, which reads as follows:

"It has come to our attention that it is contended that our agreement heretofore entered into with you covering the purchase of bridge revenue refunding bonds is illegal and unconstitutional as an undertaking on the part of the Commission to contract a general obligation indebtedness of the Commonwealth of Kentucky.

"It is our desire to most emphatically confirm our previous statements and representations to you that these proposed bonds will not and cannot constitute an indebtedness of the Commonwealth, and, as you and we have always fully recognized, could not be issued or offered for sale as general obligations of Kentucky. They are to be secured by and payable from the bridge revenues.

"The Commission is now obligated by contract, as well as by law, to fix and collect such tolls as will produce sufficient revenues to pay the bridge revenue bonds, both principal and interest, as the same become due. So long as the Commission fulfils such obligation a deficiency in bridge revenues is impossible. With this thought in mind, we provided in our proposals that only in the event such a deficiency occurred through such failure there should be an advancement from available State Road Funds and all such advancements are to be reimbursed and repaid from the bridge revenues. The proposal should be so understood and nothing therein should be interpreted as attempting to im-

pose any indebtedness or general obligation upon the Commonwealth.''

It is argued that since both parties to the contract agree that the provisions in question do not create an obligation against the general fund of the commission, the court is bound by their construction of the contract. There might be some force in this argument if they were the only parties to be affected. The bonds are to be sold to the investing public, and purchasers of the bonds will not be bound by the interpretation placed upon the provisions of the contract in question by the parties to the contract. The provisions in question are not susceptible to the interpretation sought to be placed upon them in McNear & Co.'s letter. The contract plainly provides that if bridge revenues are insufficient to meet the payments of principal or interest as they fall due the state highway commission shall make provision for such deficiencies out of the general road fund. It not only creates an obligation against the general fund of the highway commission, but the obligation extends beyond the biennial period to which the commission is limited in anticipating its revenues, and exceeds the amount of indebtedness that can be incurred under sections 49 and 50 of the Constitution. Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855.

The highway commission undoubtedly has the right to issue refunding bonds dated July 1, 1935, provided the commission issues a notice of its intention to redeem the original revenue bonds on that date pursuant to the provision in those bonds authorized by section 4356s-26, Kentucky Statutes, 1934 Supplement. If proper notice of redemption is given, interest on the original bonds will cease on July 1, 1935, and the proceeds of the refunding bonds will be available on that day for the payment of the old bonds. There will be no duplication of interest and no increase in the amount of the indebtedness, although all of the original bonds may not be presented on that day for payment. Farson, Leach & Co. v. Board of Commissioners, 97 Ky. 119, 30 S. W. 17, 16 Ky. Law Rep. 856. If the refunding bonds are sold at a premium, the amount paid in excess of their face value will not constitute an excess of bonds sold and issued, although in Commissioners of Sinking Fund of Louisville v. Zimmerman, 101 Ky. 432, 41 S. W. 428, 19

Ky. Law Rep. 689, the court apparently held to the contrary. It appears from the opinion in that case that the city of Louisville had outstanding bonds to the amount of $588,000 bearing 6 per cent. interest. It was proposed to refund the debt by the issuance of a like amount of bonds bearing interest at the rate of 4 per centum per annum. When the refunding bonds were sold, a premium was realized and it was held that to the extent of the premium there was an excess of bonds sold and, in effect, the creation of a new indebtedness, to that extent. It does not appear from the opinion whether or not it was proposed to use this excess for other than sinking fund purposes, but if the court intended to hold in that case that although the amount realized in excess of the face value of the bonds should be placed in the sinking fund for the retirement of the refunding bonds the amount of such excess constituted a new indebtedness, we think the opinion in that respect is unsound. The amount of the indebtedness for the face value of the bonds sold and issued and any premium realized is an asset to be credited later on that indebtedness. Money in hand is not an indebtedness of its owner. A proposal to sell refunding bonds in the same amount as the bonds to be retired and bearing a lower rate of interest does not portend an increase in the amount of indebtedness, and the situation is not changed because, fortuitously, a premium is realized.

We think the circuit court correctly ruled that the contract between McNear & Co. and the state highway commission did not violate the act of Congress approved June 18, 1930, which reads in part:

"If tolls are charged for the use of a bridge or bridges in a project, the rates of toll to be charged for the use of such bridge or bridges embraced in the particular project shall be so adjusted as to provide a fund not to exceed an amount sufficient to pay the reasonable costs of maintaining, repairing and operating the bridge or all of the bridges included in the particular project and their approaches under economical management, and not to exceed an amount sufficient, in addition to the foregoing, to provide a sinking fund sufficient to amortize the aggregate cost of the bridge or all of the bridges embraced in the particular project, and their approaches, including reasonable interests and

financing costs, as soon as possible under reasonable charges, but within a period not exceeding twenty years from the date of approval of this Act." Section 4, 46 Stat. 779.

The contract provides that a portion of the refunding bonds to be issued under projects 1 and 2 shall mature on June 20, 1955, but these bonds are subject to redemption on any interest payment date prior to June 30, 1955, in the discretion and at the option of the commission. The act says nothing concerning bonds, but provides that the tolls must be so adjusted as to amortize the cost of the bridges within a period not exceeding twenty years from the date of the approval of the act. It was the purpose of Congress, as it was of the General Assembly of Kentucky, to make it the duty of the state highway commission to operate and maintain the bridges in such a manner as to free them from tolls at the earliest possible date, but it was not its purpose to hamper the commission in financing their costs, nor did it intend by the act in question to prohibit the collection of tolls after the 20-year period if for any reason the revenues had not been sufficient to pay the bonds. The act does not purport to deal with the right of the commission to issue revenue bonds, and it does not attempt to limit the time such bonds shall run. Even though the act had expressly prohibited the collection of tolls after the expiration of a 20-year period, the issuance of bonds to extend beyond that period would not be a violation of the act.

It is insisted by the interveners that the notice, or advertisement, by which the state highway commission invited proposals for refunding the bridge revenue bonds did not afford a proper basis for competitive bidding, and consequently that none of the bids could properly have been accepted. The "Notice of Sale," the pertinent parts of which are set out above, merely provided that each bidder set forth in his proposal the terms and conditions under which the refunding bonds bid for were to be issued. The notice contained no setup whatever for the guidance of prospective bidders, and no terms or conditions were specified to which all bids should conform. Each bidder was required to make his own specifications and to set out his own terms and conditions. There was not common ground on which they could meet and make the bidding competitive. The

two bids received by the commission illustrate the fallacy of the argument that the ''Notice of Sale'' provided for competitive bidding. The syndicate headed by Blythe & Co. assumed that the refunding bonds would be issued under terms and conditions substantially similar to those under which the original bonds had been issued and, especially, that their payment would be secured by a lien on the bridge tolls only, and its bid was made accordingly. The syndicate headed by McNear & Co. inserted a condition in its proposal which called for additional security, and the two proposals differed in many other essential features. The bids were on wholly dissimilar terms and conditions, and were in no sense competitive. The toll bridge acts require competitive bidding, and section 10 of the act of 1928, Ky. Stats. sec. 4356s-10, specifically provides that all bonds issued under or by the authority of the act shall be sold to the highest and best bidder after being duly advertised in accordance with all provisions of the act. These provisions necessarily apply to refunding bonds which are merely substituted for the original bonds. In State Highway Commission v. Veiling, 230 Ky. 381, 19 S. W. (2d) 967, a contract for the sale of toll bridge bonds was declared invalid because there had been no competitive bidding. In defining the term ''competitive bidding,'' it was said:

''Competitive bidding requires that all bidders be placed on a plane of equality, and that they bid upon the same terms and conditions. To that end the set-up containing the terms and conditions should specify the face value of the bonds, the rate of interest [which may be more than one], the time of maturity, when redeemable, and at what price they may be redeemed. It should also state with definiteness and certainty what the state highway commission agrees to do, and exactly what the bidder agrees to do. The advertisement should call for bids in accordance with the terms and conditions specified in the set-up. In making his bid, all that the bidder will have to do will be to state the amount of his bid and make it subject to the terms and conditions fixed in the set-up. If, in the opinion of the state highway commission it is desirable, there may be more than one set-up upon which there may be alternative bidding. In this case the

set-up, while containing much valuable information, was too vague and indefinite as to the terms and conditions of sale.''

In the instant case, no set-up at all was fixed in the ''Notice of Sale.'' In fixing the rate of interest in a set-up it is not necessary to have a set-up for each proposed rate of interest, but this matter can be easily covered in a single set-up. To illustrate, the following form would be sufficient:

''All bonds of each issue will bear interest payable semiannually, January 1 and July 1, at the same rate not exceeding 4% in a multiple of one-quarter of one per cent; and each bid must specify the interest rate and the price bid for the bonds of each issue.''

This provides a competitive basis for bidding, in so far as the rate of interest is concerned.

In a brief filed by a firm of attorneys as amici curiæ, the court is requested to pass on a number of incidental questions presented by the record which are not discussed in other briefs. One of these questions relates to the right of the state highway commission to make the refunding bonds redeemable before maturity at a price not exceeding 103. Section 11 of chapter 157 of the acts of 1930 (Ky. Stats. Supp. 1933, sec. 4356s-26) makes it lawful to provide in bridge revenue bonds that they may be called for redemption prior to maturity at a price not exceeding 103 and accrued interest. In answer to the request in respect to this and all other questions listed in the brief, it is only necessary to say that the refunding bonds will be merely substitutes for the original bonds, and will have the same statutory characteristics as have the bonds to be retired, and the same rights and privileges will accrue to the holders of the refunding bonds as accrued to the holders of the original bonds.

We conclude that the chancellor erred in holding that the contract between the C. W. McNear Company and the state highway commission was not invalid because of any defects in the notice of sale or in the type of bidding requested pursuant thereto, and to that extent the judgment is reversed. In all other respects the judgment is affirmed.

The whole court sitting.