## State Highway Commission et al. v. Henderson County Board of Education.

(Decided Sept. 27, 1935.)

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellants.

ODIE DUNCAN and N. B. HUNT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The purpose of this action, brought in the Henderson circuit court by the county board of education of that county, as plaintiff, against the state highway commission of Kentucky and its members, as defendants, was to have it judicially declared that pupils eligible to attendance on the public schools in Henderson county have the right to free use of and to be transported over toll bridges constructed by the state highway commission under the provisions of chapters 172 of the Acts of 1928 and chapter 157 of the Acts of 1930, by carriers exclusively for the purpose, without being required to pay charges therefor.

The petition as grounds for the relief sought alleged that it was against the legislative policy of this commonwealth to collect tolls, fees, or charges from pupils of any of the public schools of the commonwealth, or for their transportation in going to and returning from the school attended by them for the privilege of passage over any of the roads of the highway system which they might travel. In support of that contention a long list of statutes, enacted prior to the effectual date of the chapters, supra, are referred to, and in which such exemption from the payment of fees, charges, or tolls were contained, but which enactments applied exclusively to laws relating to toll turnpikes as they existed in this commonwealth at the time of the various enactments, the latest one, perhaps, being section 4439 of the 1930 Edition of Carroll's Kentucky Statutes, which is section 113 of chapter 24, page 162 of the Session Acts of 1916, saying: "No toll shall be collected of any pupil child for travel upon any turnpike road while attending a common school." The numerous other cited prior statutes were to the same effect, and the contention of plaintiff is that they establish a settled public policy of the commonwealth that the public school pupils shall be exempted from paying any charges for the privilege of traveling over any part of the public road system of this commonwealth in their attendance upon school.

Plaintiff also cites and relies upon chapter 161, p. 738, of the Session Acts of 1934 as supporting the relief it seeks. That statute makes it a penalty for any one eligible to pay toll in crossing a toll bridge or ferry

to do so without such payment, but with this exemption therefrom: "Provided that no such toll shall be charged to children going to or returning from school. Neither shall such toll be charged for school buses or other vehicles used exclusively in the transportation of school children to and from school." Section 1.

The petition alleged that there are two toll bridges in Henderson county which were constructed under chapters 172 and 157, supra, of the Acts of 1928 and 1930, respectively—the one spanning Green river and the other the Ohio river, at the north end of which is a small territory belonging to Kentucky, and in which resides pupils attending public schools located on the south side of the main stream of the Ohio river. It is also pointed out in the petition that under the fixed scale of tolls for the bridge across Green river the amount paid and collected each day for the transportation of public school pupils is at least $6 and in a corresponding ratio for the number of pupils traveling on the toll bridge spanning the Ohio river.

A demurrer to the petition was overruled with exceptions and defendants answered, in which they expressly interposed no opposition to the granting of the relief sought by plaintiff; but set forth facts which they concluded prevented it being done, and which were: That, notwithstanding the various turnpike statutes referred to supra, and in which such exemption was contained with reference to toll turnpikes, yet chapters 172 and 157, supra, under which the involved toll bridges were constructed, by implication at least, repealed such public policy even if it could be considered as applicable to such structures, since such relied on prior legislation applied to what defendants contend was a different subject-matter, i. e., toll turnpikes; and with reference to the applicability of chapter 161, supra, of the Acts of 1934, the answer truthfully asserted that it was passed after the involved bridges were constructed, and if the exemption contended for was not available to the school pupils of the commonwealth at that time, the enactment would not apply, since it would violate the obligation of the contract which the state highway commission entered into with the bondholders and their trustee from which source the money was obtained to construct the bridges. The portion of such contract that it was contended would be so violated says: "The Commission

further covenants that tolls will be classified in a reasonable way to cover all traffic, so that the tolls may be uniform in application to all traffic falling within any resonable class, regardless of the status or character of any person, firm or corporation participating in the traffic, and that no free passage will be permitted except to employees of the Commission in the discharge of their duties, and, to the extent required by law, any person belonging to the Kentucky National Guard, together with his conveyance and the military property of the State * * * in his charge,'' and which is section 3 thereof.

It will be observed that the only exemption from the payment of the tolls in traveling over such bridges therein provided for extends to ''employees of the commission in the discharge of their duties'' and to ''any person belonging to the Kentucky National Guard together with his conveyance · and the military property of the State in his charge.'' It is therefore contended that under the maxim that the express mention of one or more things excludes all others, no person was given the right of exemption from paying tolls in the use of such bridges except those therein mentioned. It is, therefore, submitted by ·the commission that (a) the chapters of the toll bridge statutes, supra, empowered and authorized the state highway commission to enter into such a contract, and that chapter 161 of the 1934 Acts, for the reasons stated, is not applicable to toll bridges constructed prior to its enactment under the terms of section 3 of the contract therefor. Necessarily, it is also contended by defendants that such enactments (chapters 172 and 157, supra), at least by necessary implication, repealed any prior legislative public policy on the subject, even if the toll turnpike statutes could be made applicable to the later project of the commonwealth of building bridges according to the plans outlined for that purpose. In substantiation of such contention it is pointed out by defendants that the chapters of the acts referred to of 1928 and 1930 prescribe for the issuing of bonds for the purpose of raising funds to construct the bridges, and for the charging of tolls by the state highway commission as a means of raising a fund to meet the interest and to eventually discharge the bonds according to the terms agreed upon in accordance with the statutes, and gives a lien to the bond-

holders and their trustee on the gross tolls collected from travelers over the bridges; that the commission was expressly authorized to enter into a trust agreement with the trustee for the bondholders, which agreement or indenture "may contain those provisions customarily found in trust agreements securing the bonds and debentures of corporations, if not prohibited by law, and shall set forth the duties and covenant of the commission in respect of bridges to be hereafter constructed or purchased," etc. Acts 1930, c. 157, sec. 18.

Also, by section 6 of chapter 172 of the 1928 Acts, the highway commission is empowered to charge and collect tolls and fix the rates for such a length of time as in the opinion of the members thereof will be sufficient to pay off the bonds and interest and that "the rate of tolls to be charged and collected, if fixed in any bond or bonds, shall not be reduced without the consent of the holder or holders thereof." Furthermore, that by section 4 of the 1930 Acts (chapter 157), supra, "The State Highway Commission may impose such conditions as to it may seem for the interest of the Commonwealth in any contracts to be made by it for the sale of such bonds, and any contract authorized by any provision of this act, unless prohibited by law, and may assent in any such contract to reasonable conditions imposed upon the commission in its issuance and delivery of such bonds." Other portions of the 1928 and 1930 Acts are relied on as impliedly repealing any legislative enacted public policy on the subject prior to their enactment, and as empowering and authorizing the state highway commission to contract with reference thereto in carrying out the enacted scheme of raising funds to construct such bridges. The facts are undisputed and the legal questions so presented were submitted to the court when it sustained the prayer of the petition and entered judgment accordingly, from which the highway commission prosecutes this appeal.

Manifestly, if the contention of the highway commission is correct, then chapter 161 of the Session Acts of 1934, supra, would not apply in this case, since the bridges were constructed prior to its enactment, and the judgment granting the relief prayed for should be reversed. On the other hand, if neither of the chapters 172 and 157 of the Acts of 1928 and 1930, respectively, had the effect to repeal any prior declared public

policy and did not authorize and empower the highway commission to contract for the payment of toll by school children in crossing the bridges provided for, or by those exclusively engaged in transporting them to and from school, then the judgment was proper and should be affirmed. The respective contentions of the parties present interesting questions, since it must be admitted that they are not, to say the least of them, entirely without force; but, for the reasons stated below, we are convinced that the legal issues involved should not be determined under the present condition of the record.

Clearly the only ones substantially interested in their determination are the bondholders from whose advanced funds the bridges were constructed. Whichever way the case might be determined, it would have a direct bearing and effect upon the prescribed bridge funds for the eventual payment of the bonds, i. e., the gross tolls paid by persons crossing the bridges pursuant to a legally promulgated scale, and collected from those whom the valid portions of the indenture contract should pay them. To the extent that such funds would be depleted by the granting of the exemption, it would, of course, be impaired, and, necessarily such bondholders are the only ones who are directly interested. Section 28 of the Civil Code of Practice says: "The court may determine any controversy between parties before it, if it can do so without prejudice to others; if it cannot do so, it must require such other persons to be made parties, or must dismiss the action without prejudice." Many decisions from this court are cited in the notes to that section and in which it has been construed, as well as pointing out the authority that it confers upon the court.

Without some representation in this action, the bondholders, whose advanced funds constructed the involved bridges, would be prejudiced if the judgment appealed from should be affirmed, and it is our conclusion that the court on its own motion should require some representative of the bondholders to be made a party defendant to the action and to make defense on their behalf, and which should, at least, include the trustee in the indenture contract. Perhaps, also, it would be wise to make a representative bondholder a party and permit him, in conjunction with the trustee, to defend for

all others. When that shall have been done, and the cause thereafter determined, an appeal therefrom will no doubt be advanced by this court and determined as quickly as possible.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and for proceedings consistent herewith.