# State Highway Commission et al. v. County Board. of Education of Henderson County.

### (Decided March 27, 1936.)

B. M. VINCENT, Attorney General, and BRUCE & BULLITT for appellants.

N. B. HUNT and ODIE DUNCAN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming..

This is the second appeal of this action. Upon. the first, we reversed the lower court's judgment rendered in the action brought against the state high-- way commission to establish the right of pupils, attending the county schools, to free use of the certain. state toll bridges involved and located in Henderson county, upon the one ground that the holders of the bonds issued to finance their construction were necessary parties, where the highway commission had agreed, in their trust indenture contract had with the trustee for bondholders, to exempt from payment of tolls for use of such bridges only two classes of travelers thereover, but neither of which included school

children. State Highway Commission v. Henderson County Board of Education, 260 Ky. 459, 86 S. W. (2d) 123.

Upon the return of the case to the lower court, the Fidelity & Columbia Trust Company, the trustee in the indenture, and two bondholding banks of Henderson, as representatives of their class of bondholders, having been made defendants and having filed answers, the cause was again submitted for judgment upon the pleadings and exhibits, when judgment was again rendered thereon in favor of the plaintiff, judicially declaring that the school children attending the public schools of Henderson county were exempt from the collection and payment of tolls, as were also the vehicles used exclusively in transporting them to and from these public schools maintained by the plaintiff and state in the districts, and directing that a writ of mandamus be issued against the defendant highway commission and its members, commanding them and their agents to cease the complained of charging and collecting of these public bridge tolls from them.

The defendants, the state highway commission and the trustee in the indenture contract, having appealed from this judgment, contend that if the contract entered into for the sale of these bridge construction bonds between the commission and the trustee for the bondholders was valid, in providing that only two classes of travelers using such toll bridges were exempt from payment of tolls, and which exclusion did not embrace school children using the bridges while in attendance upon their public schools, the lower court's judgment, in exempting such further class of users of the toll bridges from payment of tolls, was erroneous and in violation of both the Kentucky Constitution and the Constitution of the United States, as impairing the obligation of the state's contract had with the trustee, pledging the gross toll receipts of the bridge as security for the payment of the bridge revenue bonds sold them upon the basis of the contract so providing.

It is thus apparent that there is here presented, just as there was upon the first appeal, but the one question, which is, as was there stated in the opinion to be, that:

"The purpose of this action, brought in the Henderson circuit court by the county board of education of that county, as plaintiff, against the state highway commission of Kentucky and its members, as defendants, was to have it judicially declared that pupils eligible to attendance on the public schools of Henderson county have the right to free use of and to be transported over toll bridges constructed by the state highway commission under the provisions of chapter 172 of the Acts of 1928 and chapter 157 of the Acts of 1930, by carriers exclusively for the purpose, without being required to pay charges therefor."

The plaintiff, the Henderson county board of education, in its petition alleges that the defendant highway commission is the owner and operator of two certain toll bridges, located wholly within Henderson county, the one crossing Green river at the village of Spottsville, the other crossing the Ohio river at Henderson, designated as the Audubon bridge, on each of which the defendant has fixed and was charging and collecting tolls from all persons and vehicles crossing the same, except employees of the said commission; further, that the plaintiff county board of education was then maintaining under the laws of the commonwealth free public schools, one located in the said village of Spottsville and another located at Weaverton, adjacent to the city of Henderson, each of which schools was supported by per capita payments made by the commonwealth and by taxes levied by the fiscal court of Henderson county, pursuant to the budget requirements of the plaintiff, board of education; that many of the pupils embraced in the common school census reside within the Spottsville school district, who are entitled and required by law to attend the public school maintained in said district, but who reside across the said Green river from the town of Spottsville, wherein the school building for said district is located, and must needs cross the aforesaid toll bridge to attend said public school, and that plaintiff employs busses to transport said pupils from their homes to and across said toll bridge to said school building, and that the amount of toll demanded of and paid by this plaintiff for the passage of its school busses across the toll bridge is $6 per day; further, that between

three and seven pupils of those embraced in the census reside within the aforesaid Weaverton school district across the Ohio river from the school building in said district; that they, too, are entitled and required to attend daily sessions of said school maintained in that district and must cross the said Audubon bridge to attend the daily sessions of that school; that these pupils sometimes cross this toll bridge on foot and at other times are collected and brought across the bridge in a vehicle employed exclusively as a school bus, and that the amount of tolls paid by plaintiff for said pupils is approximately $1 a day; that all of such tolls so charged and collected, the petition asserts, have been illegally charged and collected, in violation of the laws of the state, as made and provided for the transportation of school children to their respective public schools; that all tolls so paid have been paid by the plaintiff from the funds in its hands for the maintenance of its schools under and within its jurisdiction; and that many, if not all, of said pupils are poor, and would be denied attendance upon said schools, except for the necessary payment of the charged bridge tolls by plaintiff.

Further, the petition alleged that plaintiff had demanded from the state highway commission and trustee free transportation for said pupils and for the vehicles exclusively transporting them to and from their said schools, which demand the defendants had refused, and had directed their toll keepers to permit no persons to cross said bridges without the payment of the fixed tolls, and which instruction, while not expressly naming said school children, does yet, by its generel terms used, include them.

Wherefore, plaintiff, alleging that it was without adequate remedy except as herein set out, prayed that a writ of mandamus be issued, directing the defendant commission to cease collecting tolls of said pupils so crossing each of said bridges, whether afoot or in vehicles exclusively used in their transportation, and, further, that it accordingly so instruct its agents in charge of collecting tolls upon said bridges.

Demurrers were filed to the petition, which were overruled.

The Farmers Bank & Trust Company and the First National Bank of Henderson, Ky., and the Fidelity & Columbia Trust Company of Louisville, Ky., as trustee for the bondholders under the trust indenture, having by an amended petition filed, been made defendants to the action, filed separate answers; the defendant banks, therein not asserting or insisting that the trust indenture, pursuant to which the bridge revenue bonds had been issued, was valid, only pleaded that the bonds held and owned by them represented so small a per cent. of the total of the bonds issued and that the tolls collected from said Audubon bridge involved represented so small an amount that they did not desire to take part in the proceedings, and further pleaded that they were without authority and therefore declined to plead or make defense as representatives for the remaining bondholders.

The defendant highway commission also by its answer admitted its willingness to permit pupil children and vehicles transporting them to cross toll bridges free of tolls while going to and from their respective common schools, if the granting of such free passage were not prohibited by the contract between it and the appellant trustee, but further pleaded facts which it deemed precluded its being done, and which were that, notwithstanding the various turnpike statutes under and upon which plaintiff based its claim of right to exemption of its school children from payment of tolls, such statutes they alleged related only to toll turnpikes, not to the different subject-matter of toll bridges, while chapters 172 and 157 of the Bridge Building Acts of 1928 and 1930, respectively, under which the toll bridges here involved were constructed, repealed, at least by implication, such earlier statutory declarations of legislative public policy, even if same could be considered as applicable to toll bridges rather than to the different subject-matter of toll turnpikes, to which only they related, in prescribing an exemption, for school children, from tolls.

The Fidelity & Columbia Trust Company, trustee, hereinafter called trustee, for its separate answer to the petition and amended petition, after first traversing the allegations of the petition, pleaded by separate paragraph that under and by virtue of chapters

172 and 157 of the Acts of 1928 and 1930, respectively, the state highway commission of Kentucky was authorized to purchase and construct highway toll bridges over any streams within the commonwealth of Kentucky or forming the boundary line between it and any adjoining state, and by said acts it was specifically authorized to issue and sell bridge revenue bonds, with which to purchase or construct the desired highway toll bridges; that pursuant to these acts, the highway commission did so contract to issue and sell bridge revenue bonds, from the proceeds of which it purchased and constructed numerous toll bridges throughout the commonwealth, including the aforesaid two bridges here involved; and that the owners and holders of said bridge revenue bonds, under the provisions of said acts, were not given a lien upon any bridge or bridges, approaches, or real estate appurtenant thereto, purchased or built with the sale proceeds of the bonds, but it was expressly provided by section 2, chapter 157, Acts 1930, only that "such bonds shall be secured by a first lien on the gross tolls and other revenues of the bridge or bridges in the project for which the bonds are issued."

Further it pleaded that by section 4 of this act the Legislature specifically delegated to the state highway commission the right and authority to "impose such conditions as to it may seem for the interest of the Commonwealth in any contracts to be made by it for the sale of such bonds, and any contract authorized by any provision of this act, unless prohibited by law," and further authorized it by section 18 of the said act, "in order to provide for the further protection of the Commonwealth and the holders of such bonds," to enter into a trust agreement with a trustee, which should be a trust company, etc., with the limitation that "said trust indenture may contain those provisions customarily found in trust agreements securing the bonds and debentures of corporations, *if not prohibited by law,* and shall set forth the duties and covenants of the commission in respect of bridges to be hereafter constructed or purchased and the conservation and application of funds and the insurance of moneys on hand or on deposit and the rights and remedies of the trustee and the holders of the bonds." (Italics ours.)

Further it pleaded that pursuant to the said authority so given it, the defendant highway commission had entered into a trust indenture with the defendant Fidelity & Columbia Trust Company, as trustee, article 4 of which relates to tolls and sinking fund procured from the operation of the state's toll bridges, and that section 3 of this article, among others, would be violated if school children were exempted by it from the payment of bridge tolls, in that section 3 expressly provides:

"The commission further covenants that tolls will be classified in a reasonable way *to cover all traffic,* so that the tolls may be uniform in application to all traffic falling within any reasonable class, firm or corporation participating in the traffic, and *that no free passage will be* permitted except to employees of the commission in the discharge of their duties, and, to the extent required by law, any person belonging to the Kentucky National Guard. * * *" (Italics ours.)

Further, it pleaded that the commission had specific authority, under the provisions of the aforesaid acts of 1928 and 1930, to enter into this trust indenture and that it is fully bound by each and all of its provisions, including the quoted section 3, supra, providing that the defendant commission could not permit the use of said bridges by any person or persons without the payment of tolls, except to employees of the commission and persons belonging to the Kentucky National Guard, and that to extend, in contravention of the terms of the agreement, exemption from payment of tolls to school children, as adjudged, would be a breach or impairment of the contract.

The trustee contends that under the maxim, "expressio unius est exclusio alterius," the express exemption of the two named classes of persons from the payment of tolls excludes all others, as no other person or other class of persons was given the right of exemption from payment of tolls in the use of the state bridges, except those therein mentioned, nor can another or additional class of toll exempted persons be made to the contract, without impairing the obligation.

The General Assembly of Kentucky, by its enactment at its regular 1928 session of chapter 172 of the Acts, known as the "Murphy Toll Bridge Act," authorized and empowered the state highway commission, as agent of the commonwealth, to build, acquire, and own interstate and intrastate bridges on the state primary system of highways. Acts 1928, c. 172, sections 4356s-1 to 4356s-15, inclusive, Kentucky Statutes.

By section 4 of this act it is provided that:

"The payment of said bonds, together with the interest thereon, shall be secured by a first lien on all tolls collected on said bridge or bridges, and also by a first lien on such bridge or bridges, its approaches and all real estate appurtenant thereto. The payment of no bond or interest thereon authorized by this Act shall be an obligation of the Commonwealth of Kentucky; nor shall any bond be payable out of any fund except such as may be derived from toll bridges."

This act was held to be constitutional in Bloxton v. State Highway Commission, 225 Ky. 324, 8 S. W. (2d) 392.

Following this, the General Assembly, at its 1930 session, passed an act, which abolished the lien created by the 1928 act on the bridges themselves, as a security for the bonds, and made certain other changes in respect to the authority and power of the state highway commission in issuing bridge revenue bonds. Acts 1930, c. 157, sections 4356s-16 to 4356s-38, inclusive, Kentucky Statutes, 1933 Supp.

This 1930 act was also held constitutional in Estes v. State Highway Commission, 235 Ky. 86, 29 S. W. (2d) 583, 585.

In the case of State Highway Commission v. King et al., 259 Ky. 414, 82 S. W. (2d) 443, 446, it is said:

"The act creating the highway commission vests it with broad powers, and the toll bridge acts of 1928 and 1930 imposed upon the commission the duty to operate and control the bridges built or purchased under the provisions of the acts in such a manner as to pay off the indebtedness at the

earliest possible date, and thus to free them to the use of the traveling public. This clearly expressed purpose runs through these acts, and it was evidently the intention of the Legislature to make it the duty of the commission in the exercise of its sound discretion to *operate and maintain the bridges, fix the toll rates, and finance the costs so as to accomplish the primary object of the Legislature,* to wit, the acquirement of bridges free of tolls *as a part of the state primary system of highways* at the earliest possible date.'' (Italics ours.)

To like effect it was also said in the Estes Case, supra:

"The purpose of that act [referring to the act of 1928] was to confer power upon the state highway commission to enter upon a plan of constructing bridges connecting and making more convenient to the traveling public the primary roads of the state, and connecting the primary roads of this state with main highways in other states. A reading of that chapter shows that the main idea running all through it is that the state highway commission may sell bonds to obtain the necessary funds to construct such bridges and, as security for the payment of the bonds so issued, may pledge the tolls received from such bridges as security. Consonant with that main idea, the state highway commission as an administrative body was given authority to do all such things as might be found necessary within the limits of the act, and other laws on the subject, to carry into effect the purposes so expressed."

By sections 4 and 18 of chapter 157 of the Acts of 1930, amending, as stated, the Murphy Act of 1928, the highway commission is given the authority to enter into contracts for the *building of toll bridges as parts of the state's system of highways* upon such terms as are not prohibited by law or, "if not prohibited by law."

The revenue bonds here involved were issued and sold in 1930, under the provisions of these toll bridge acts of 1928 and 1930, by the commission under the authority there given it as a ministerial agent to con-

104

tract for the sale of such toll bridge bonds, but with the limitation that such contract should not be in contravention of the provisions* of any existing law, or, that the terms of the contract should not be prohibited by law.

It is the contention of the appellee, Board of Education, that the quoted section 3 of the indenture, made with the trustee, by reason of its failure to exempt from the payment of bridge tolls all school children who used for passage the bridges in attending their public schools, was in violation of the public policy of the state, as same was declared in the statutes and in effect at the time of the execution of that contract, and that the contract, to the extent that such of its terms were, by reason of their being prohibited by such declared public policy then existing, in excess of or ultra vires of the authority given it, was invalid; that the defendant commission, and trustee for bondholders, when making this contract, excluding by implication school children from the class of persons therein named as given exemption from the payment of bridge tolls, all knew or were charged with knowing that such exclusion was in violation of the state's long settled public policy, as it had been expressly declared in numerous enactments then in effect, that no tolls should be collected of any pupil child for travel upon any turnpike road while attending a common school and therefore to such extent was invalid.

Appellant's answering contention is that if such be the case, that the provisions of such earlier or then existing statutes were by implication, at least, repealed by the provisions of these later bridge building and purchasing acts of 1928 and 1930, conferring upon the highway commission, as an administrative body, the authority to do all such things as might be found necessary, within the limits of the act, to carry into effect its bridge building purposes so expressed. Section 14 of chapter 172, Acts 1928, provides that:

"All Acts or parts of Acts in conflict herewith are hereby repealed to the extent that they are in conflict. * * * And it hereby is declared to be the legislative intent to increase the authority of the commission rather than to repeal or impair any author-

ity now in them; also to increase and make available additional money with which to acquire and build bridges and to *regulate and control tolls thereon.*"

Of course, it may be conceded that had it been the purpose and intent of the Legislature to repeal the then existing statutes, providing for the exemption from tolls of school children using the state's toll roads or toll bridges when attending their public schools, it had the authority to do so either expressly or by necessary implication, but the question here remains, Does the language of the statute support such contention by manifesting any intention on the part of the Legislature to repeal by implication these statutory declarations of the state's public policy, as to its public schools, of granting exemptions from tolls to school children in attending them? The express language of the bridge building and purchasing act, conferring this ample authority upon the commission to construct toll bridges as parts of the state's public highways, was that,

"Said trust indenture may contain those provisions customarily found in trust agreements securing the bonds and debentures of corporations, *if not prohibited by law.*"

Acts 1930, c. 157, sec. 18.

The charging and collecting of tolls from school children, for the use of turnpikes or highways of the state in attending their public schools, was, by the legislative public policy of the state, declared in various of its statutes then in effect to be "prohibited by law," and, therefore, the appellee board of education contends that the commission's authority to contract for the sale of its bonds being so restricted by the limitation imposed upon its authority to contract, that it was not to make or enter into a contract for the sale of its bridge bonds upon terms prohibited by law, it clearly must follow that such bridge building act did not authorize the commission to enter into the contract in question, by implication providing the charging and collecting of bridge tolls from them.

Further, it is to be noted that no provision of the 1928 or the 1930 act can be interpreted as either re-

motely or by implication embracing or dealing with the question of *exemption* from tolls nor as to what classes of persons will be required to pay tolls over these bridges, and therefore it would appear that since the question of the exemption of tolls is not embraced within the purview of either of these acts, the clause of the 1928 act, quoted supra, repealing other legislation in conflict with it, cannot be construed to repeal the prior statute in force at that time, nor the oft declared public policy of the state to grant free tolls to school children in aid of the state's scheme to give them all the facilities of its educational system without tax or charge.

As evidencing that such is now and has long been the continuously declared public policy of this state to exempt school children attending the state's common schools from any payment of tax or charge, the state Legislature, even as far back as 1866, enacted an act exempting school children from the payment of tolls when passing through turnpike gates, required of them in going daily to and from school, no matter whether traveling in vehicles or on horseback. Meyers Supplement to the Revised Statutes, published 1866 (Appendix, p. 764, Act Feb. 15, 1866).

Further, in chapter 110, section 4 of the General Statutes, published in 1881, is found this later provision:

"Sec. 4. The managers of any road in which the State has an interest may permit ministers of the gospel to travel on the road without paying toll, when on ministerial duty; and shall charge no toll against' scholars going to or from school."

Again, by section 4, chapter 259, p. 1404, Acts 1893, entitled, "An Act to regulate and control turnpike and gravel and plank roads," this exemption of school children is provided for:

"The managers of any road in which the State (or county) has an interest * * * shall charge no toll against scholars going to or from schools."

In 1896 (Acts 1896, c. 23), this section was amended by striking tHerefrom the words, "in which the

State (or county) has an interest," leaving it to read as it is now found in section 4726, Kentucky Statutes, and providing that:

"The managers of any turnpike, gravel or plank road * * * shall charge no toll against scholars going to or from school."

Again, section 30, chapter 80, Acts 1914 (section 4316, Kentucky Statutes), provides that "all coaches, carriages, vehicles and horses used by persons going to and from schools shall be exempt from tolls."

While this section of the act was declared unconstitutional in the case of Houston v. Boltz, 169 Ky. 640, 185 S. W. 76, it was only so declared upon the ground that the title of the act referred to public roads only and did not include toll roads.

Also, an act approved March 18, 1912, page 309, chapter 110 of the acts, provided for a like exemption to school children, but this section (39) containing the exemption was likewise declared unconstitutional for the same reason, in that its title did not include toll roads.

Section 4726, Kentucky Statutes, being an amendment of the 1893 acts, supra, is now and was in full force and effect on July 1, 1930, when the contract here involved between the highway commission and the Fidelity & Columbia Trust Company was entered into.

Again by section 113, c. 24, Acts 1916 (section 4439, Kentucky Statutes—1930 Edition), it is to like effect declare as the public policy of the state that:

"No toll shall be collected of any pupil child for travel upon any turnpike road while attending a common school."

Giving due regard and weight to t h e s e repeated statutory declarations of the public policy of the state respecting the exemption from payment of tolls of its school children in their necessary use of the toll roads, it would follow, even independently of section 4356s-33, Kentucky Statutes, 1933 supplement, (section 18, c. 157, 1930 acts), authorizing the commission to construct these toll bridges and permitting the highway commis-

sion to enter into trust indentures for the purpose of securing said bonds in the customary form, "if not prohibited by law," that the commission is not authorized to insert any provision in that contract which contravened or was in violation of the provisions of these statutes so declaring the public policy of the state and, a fortiori, would such provision of the contract be ultra vires of the commission's authority to so contract, where the language of the section conferring the authority to contract for bridges was qualified and limited by the reservation that such authority given did not embrace the right to make contracts for the payment of the bonds upon terms which were "prohibited by law?"

The further question before us then is, can this declared legislative public policy of the state, shown by the recitals supra to have been for nearly a century repeatedly enacted and re-enacted with regard to the turnpike or toll roads, forbidding the exaction of tolls from school children, be properly held to apply by analogy also to toll bridges, upon the ground that they are by the statutes treated as constituting and being but a part of the state's public highways and, as such, subject to the same laws exempting school children from the payment of tolls for their use? If this question be answered in the affirmative, then does it not follow that section 3, article 4, of the trust indenture, in failing to exempt school children from the payment of tolls, or in forbidding their free passage on said bridges, is to such extent contrary to the intent and policy of the statutes and, for such reason, prohibited by law and therefore invalid?

The validity of the indenture is to be determined only by the provisions of the earlier Acts of 1928 and 1930, in effect when, and under the claimed authority of which, the contract was made and it is unaffected by the Acts of 1932 (Chapter 162, section 2) and 1934 (Chapter 161, section 1)—the one prohibiting and the other requiring the giving of the said exemption—discussed in briefs, as clearly they, being without retroactive operation, cannot be held to affect the earlier contract.

Appellants contend that notwithstanding these va-

rious turnpike statutes referred to, they are not applicable to the different subject-matter of toll bridges constructed under the provisions of these toll bridge building acts of 1928 and 1930, nor are they effective to grant like exemption to school children from the payment of tolls when using the toll bridges.

However it is the contention of appellee that in as much as toll bridges are to be considered as constituting a part of the highway, which is to such extent a toll road, the policy of these statutes is applicable to toll bridges.

Section 3, chapter 157, Acts 1930, provides that:

"All such bridges to be purchased or built by the State Highway Commission will form a part of the State Primary System of Highways and will benefit the entire State,"

and that:

"Tolls on such bridges should as far as practicable be continued until the costs of all such bridges shall be paid."

Also, in the case of Whitley County v. Luten Bridge Co., 208 Ky. 625, 271 S. W. 676, 677, the definition and adjudgment of a state highway as including a bridge thereon was quoted with approval as same was adjudged in the case of Denton v. Pulaski County, 170 Ky. 33, 185 S. W. 481, 482, wherein the court said:

"A bridge is nothing more than that part of a road which crosses a stream, and the power to issue bonds for public road purposes necessarily carries with it the power to build bridges, which are a part of the road. Hence the statute is a correct legislative interpretation of the power conferred by the Constitution, and its only effect is to make that power more specific. Since a vote for bonds for building roads is, in effect, a vote for bonds for building bridges, it is clear, we think, that the form in which the question was printed was not misleading."

Also, in the case of State Highway Commission v. Smith, 250 Ky. 269, 62 S. W. (2d) 1044, 1047, it was held that a ferry was but a continuation of a highway

from one side of the water over which it passes to the other and was but a necessary incident to the use of the highway and constitutes a part of it.

In this case, also, there was cited and quoted with approval the language of the court's opinion given in the case of Sullivan v. Board of Supervisors, 58 Miss. 790, wherein it was said:

> "Where a stream crosses a public highway, the continuity of the highway is not broken; it does not end on one side of the stream and begin again on the other, but continues across the stream, and the public, for the purposes of travel, have the same right to go on the water over the highway that they have to pass along any other portion of it; but, as a physical obstruction intervenes, it is necessary that some convenient means of transportation shall be furnished, and the simplest and most economical in many cases is by ferry."

See, also, the case of State Highway Commission v. King, 259 Ky. 414, 82 S. W. (2d) 443, 446, wherein it was held that toll bridges are but parts and continuations of the state highways and subject to the rules and regulations governing their use. In so identifying and defining toll bridges as parts of the highways along which constructed, the court said:

> "This clearly expressed purpose runs through these acts, and it was evidently the intention of the Legislature to make it the duty of the commission in the exercise of its sound discretion to operate and maintain the bridges, fix the toll rates, and finance the costs so as to accomplish the primary object of the Legislature, to wit, the acquirement of bridges free of tolls as a part of the *state primary system of highways* at the earliest possible date." (Italics ours.)

Also see to such effect the annotation of the learned author to the case of Henderson v. City of Lexington, 111 S. W. 318, 33 Ky. Law Rep. 703, in 22 L. R. A. (N. S.) 20, 135, dealing with the subject of bridges, wherein it is said:

> "Bridges built to accommodate travelers crossing rivers are public highways, and private property taken for them by right of eminent do-

main is taken for public use. Young v. McKenzie, 3 Ga. 31; Arnold v. Covington & C. Bridge Co., 1 Duv. 372; Covington & C. Bridge Co. v. Magruder, 63 Ohio St. 455, 59 N. E. 216.

"This is as true with respect to toll bridges as it is of free ones. Southern Illinois & M. Bridge Co. v. Stone, 174 Mo. 1, 63 L. R. A. 301, 73 S. W. 453; Plecker v. Rhodes, 30 Grat. (Va.) 795."

Numerous authorities, both of case and statute, to like effect are cited in the excellent brief of appellee, which we deem it unnecessary to here set out.

Such being the nature and character of toll bridges as amenable to the same rules applicable to toll roads, with respect to the legislative policy of the state to exempt school children from payment of tolls in the use of such roads or bridges, when in attendance upon a public school, it follows that the state highway commission in the instant case had no power to do anything more than to fix the toll rates of persons subject to the payment of tolls and, since the acts of 1928 and 1930 did not contain any provisions repugnant to the right of school children to free tolls, and, further, did not either expressly or by implication repeal any statute or public policy which gives that right, the rights of the school children to such exemption from tolls must remain as they were before the passage of these bridge building and purchasing acts and before the execution of this trust indenture.

We are, therefore, of the opinion that the appellant bondholders and their trustee, having bought these bridge construction bonds with the knowledge or charged with the knowledge that the commission was without right to enter into a contract prohibited by law, or when denying exemption from payment of tolls to the school children, for the school children's necessary use of the toll bridges in attending the public schools, repeatedly declared to be the legislative policy of the state, took or b o u g h t the bridge b o n d s subject to the right of the pupils to exemption from tolls and cannot now be heard to complain that the granting of such exemption to them afterwards is an impairment of their contract and violates either the Kentucky Constitution or that of the United States.

112

Therefore, we are of the opinion, as expressed in the language of the court's opinion upon the first appeal, that as (rather than "if") neither of the chapters 172 and 157 of the acts of 1928 and 1930, respectively, had the effect to repeal any prior declared public policy and did not authorize and empower the highway commission to contract for the payment of toll by school children in crossing the bridges provided for, or by those exclusively engaged in transporting them to and from school, the judgment of the lower court is proper. Judgment affirmed.