# Cook v. City of Louisville et al.

(Decided Sept. 27, 1935.)

PETER, HEYBURN, MARSHALL & WYATT for appellant.

SHACKELFORD MILLER, Jr., and GORDON, LAURENT, OG-DEN & GALPHIN for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Jefferson circuit court, under the Declaratory Judgment Act

(Civil Code Prac. sec. 639a-1 et seq.), sustaining the power of the Louisville Bridge Commission to refund $4,399,000 of City of Louisville Bridge Revenue 4½ per cent. bonds, issued under date of May 1, 1928, and due May 1, 1948.

By chapter 74 of the Acts of 1928 (Ky. Stats., secs. 30371-1 to 30371-14), the General Assembly created a bridge commission in cities of the first class, with various powers and duties in the operation and maintenance of any bridges constructed, and authorized the issuance of bonds for the purpose of building a bridge. The bonds were made payable solely out of revenues collected for the use of the bridge. The act was upheld and the validity of the original bonds sustained by this court in the case of Klein v. City of Louisville, 224 Ky. 624, 6 S. W. (2d) 1104. Similar authority from the Federal Government was secured through an Act of Congress, approved February 25, 1928 (Public No. 73, 70th Congress, 45 Stat. 146).

Pursuant to the provisions of the above acts, the Louisville Bridge Commission duly issued $5,500,000 City of Louisville Bridge Revenue 4½ per cent. bonds, due May 1, 1948. The bonds were made redeemable at a premium prior to their maturity. The bridge was constructed at a total cost considerably less than the proceeds of the original bonds, and the surplus in the construction fund was used to retire bonds. On the basis of the present earnings of the bridge and the interest rate borne by the outstanding bonds, it is anticipated that it will not be possible to retire the $4,399,000 of bonds remaining unpaid at their maturity on May 1, 1948. Recognizing this situation and the probable necessity for refunding the outstanding bonds, the Omnibus Bridge Bill recently passed by Congress, approved August 30, 1935 (Public No. 411, 74th Congress), authorizes such refunding on behalf of the Federal Government. Believing that it is for the best interest of all concerned to refinance these obligations at a lower interest rate in the present favorable bond market, the Louisville Bridge Commission has entered into a contract for the sale to a syndicate of investment bankers of such amount of Bridge Revenue 3¾ per cent. refunding bonds, due November 1, 1955, as may be necessary to provide funds for the redemption on November 1, 1935, of all the outstanding 4½ per cent. bonds. The

saving of three-fourths of one per cent. per annum in interest over a period of years, on the basis of the estimated earnings of the bridge, will result in a net reduction of the total debt exceeding $250,000, over and above the premium necessarily now paid to redeem the outstanding bonds. The new bonds likewise will be redeemable before maturity, but at a smaller premium than the present issue. The savings in interest, coupled with the extension of maturity, make it reasonably certain that the commission will be able to avoid a default in meeting its obligations. It is likewise apparent that the reduction in premium required to redeem the bonds before maturity will necessarily result in freeing the bridge or in reducing the tolls for the use of the bridge at an earlier date than would be possible under the present arrangement.

Any doubt that may have existed concerning the power of the Bridge Commission to refund the original issue of bonds has been set at rest by the decision of this court in State Highway Commission v. King, 259 Ky. 414, 82 S. W. (2d) 443, 446, as are also most of the other objections raised by appellant to the proposed refunding. We held in that case that powers given to the State Highway Commission in the operation, maintenance, and financing of state tollbridges, under acts substantially similar to the Bridge Commission Act, clearly implied a power to refund the bonds provided for in those acts, although no such power was expressly conferred. We said in that case:

"The implied power to refund outstanding bonds at a lower interest rate and thus, in effect, to reduce the indebtedness is a necessary incident of the powers expressly conferred in view of the purpose of the toll bridge act."

It is urged by appellant that because it is necessary to pay a premium in the amount of approximately $175,000 to redeem the outstanding bonds at this time, the Bridge Commission is without power to issue refunding bonds the proceeds of which will be used solely to pay the premium. The power to refund clearly includes such other powers as may be essential to make it effective. The only limitation on the amount of bonds that the commission can issue is that the proceeds shall be used "solely for the payment of the cost of the

bridge." Although $5,500,000 per value in bonds were originally issued by this very commission, no one seems to have thought to question the validity of the bonds in excess of the amount actually necessary to pay for the construction of the bridge. The excess proceeds were used simply to redeem the excess bonds and, of course, at a premium. The issue now of $175,000 par value in bonds to cover the premium payable on redemption actually reduces the amount ultimately required to liquidate the debt and thus makes possible an earlier reduction in tolls. To decide that the issuance of bonds necessary to pay the premium for redemption was not devoting the proceeds "solely for the payment of the cost of the bridge" would be to ignore the substance for the form. Furthermore, the act (section 9 [Ky. Stats. sec. 3037l-9]) expressly authorizes the payment of a premium for the redemption of the bonds before maturity. If the power to refund is to be implied, as it plainly is, under the King Case, supra, there is clearly a like implication of authority to pay a premium.

Appellant likewise urges that the Bridge Commission is without power to extend the date of maturity of the bonds now issued. We held in the King Case, supra, that the provision requiring the commission "to provide a sinking fund sufficient to amortize the aggregate cost of the bridge * * * as soon as possible under reasonable charges, but within a period not exceeding twenty years from the date of approval of this Act" (Act Cong. June 18, 1930, sec. 4, 46 Stat. 779) made it the duty of the Highway Commission to operate its bridges in such manner as to free them from tolls at the earliest possible date, but that such provision related to the maintenance and operation of the bridges and not to the date of maturity of the bonds. So, here, the obvious purpose and intent both of section 9 of chapter 74 of the Acts 1928 (Ky. Stats. sec. 3037l-9) and the act of Congress is to free the bridge from financing costs as soon as possible. The bonds here to be issued will mature "in no more than 20 years from their date or dates" and are redeemable at par after 1945. Necessarily the debt will be paid sooner under the proposed scheme than was possible under the existing arrangement. It is not claimed that the tolls on the bridge would have to stop in 20 years whether the bonds were paid or not. Clearly, this is not true. Kane v.

City of Charleston, 161 Ill. 179, 43 N. E. 611. However, under present estimates of revenues, the bonds cannot be amortized in 20 years from their original date. The commission must either face a prospect of default at maturity, raise its tolls, or cut down its debt. Can any one question which step is in the public interest? If the debt is to be reduced materially through taking advantage of cheaper money now available, the step must be taken now and not at the maturity of the bonds or at the threshold of default. The sooner the rate of interest is reduced, the greater will be the saving to the public, and the earlier the freeing of the bridge. The proposed arrangement so closely accords with the purpose and intent of the statutes involved as to leave no doubt in our minds of its validity thereunder.

Appellant likewise urges that, under the statute, the Bridge Commission stands dissolved upon payment of the bonds now outstanding, and its power to collect tolls ceases. Section 11 of the 1928 act (Ky. Stats. sec. 3037l-11) provides that the tolls ''shall cease when such bonds and the interest thereon have been paid or a sufficient amount has been provided for such payment.'' Section 13 of the act (Ky. Stats. sec. 3037l-13) provides that the commission will stand dissolved when ''such bonds of any such city and the interest thereon shall have been paid or their payment fully provided for.'' Both of these provisions refer to the payment of the bonds, but it is quite evident that the term was meant to refer to the payment of the debt evidenced by the bonds and that the term includes not only the original bonds but any refunding bonds that may be substituted therefor. To give these provisions of the act the effect contended for by appellant would be to deny entirely the power to refund the bonds before their maturity. We have already determined that the power to refund exists. The refunding does not create a new indebtedness. Gaulbert v. City of Louisville, 97 S. W. 342, 30 Ky. Law Rep. 50. Clearly, as we determined in the King Case, supra, the refunding bonds will be mere substitutes for the original bonds and will bear the same statutory characteristics as the original bonds.

Finally, appellant contends that under the language of the trust indenture, the trustee has no power to issue a call for redemption of outstanding bonds unless at the time of the call (30 days before the date of redemption)

the trustee has sufficient funds in its hands to pay for the bonds when presented for payment. Appellant relies on the following language contained in the trust indenture:

> "It shall be the duty of the trustee to call for redemption * * * such of the bonds secured hereby and then outstanding as can be redeemed on the next day for interest payment * * * by means of monies then or theretofore deposited with the trustee by the city or commission for that purpose."

Appellant contends that the words, "then or theretofore deposited," relate to the time of call as well as to the date of payment. However, it will be observed that the date mentioned immediately preceding the words, "then or theretofore deposited," is the "day for interest payment," the date on which it is now proposed to call the bonds for redemption. Grammatically, the phrase, "then or theretofore deposited," refers to the "day for interest payment." There would be nothing to be gained in requiring that the funds remain idle in the hands of the trustee from the date of call until the date of redemption. It seems to us that the trustee is acting within the clear scope of the indenture if it is reasonably assured that it will have funds on hand with which to redeem the bonds on the date set for their redemption, and that it is not necessary under the terms of the indenture that the trustee actually have the cash in its hands on the day when the call for redemption is issued.

Judgment affirmed.

Whole court sitting.