STATE OF MISSOURI at the relation of ST. CHARLES COUNTY, Relator, v. FORREST SMITH, State Auditor.—152 S. W. (2d) 1.

Court en Banc, June 12, 1941.

*Joseph B. Wentker, Carl Trauernicht* and *Wm. Wayne, Jr.,* for relator.

8

*Roy McKittrick,* Attorney General, and *Olliver W. Nolen,* Assistant Attorney General, for respondent; *John L. Graves* of counsel.

■ LEEDY, C. J.—Original proceeding in mandamus. The principal question for decision is whether St. Charles County may lawfully issue refunding revenue bonds for the purpose of retiring outstanding toll bridge revenue bonds.

The respondent has adopted the statement of relator, and we adopt and repr■duce the same without resort to quotation marks, as follows:

On May 20, 1936, pursuant to an order of the County Court of St. Charles County, made on said day, St. Charles County purchased the Lewis Bridge spanning the Missouri River near Bellefontaine, Missouri, and having its northern terminus within the County of St. Charles, and the Clark Bridge spanning the Mississippi River at Alton, Illinois, and having its southern terminus within said County, and for the purchase of the approaches and the roadways connecting said bridges and connecting the Lewis Bridge with State Highway 94, and Highways 99 and 140.

In full and complete payment for said bridges, the County issued the Toll Bridge Revenue Bonds of said County in the sum of Two Million, Seven Hundred Fifty-seven Thousand ($2,757,000.00) Dollars; said bonds being issued in two (2) series, designated Series "A" and Series "B." The bonds of Series "A" were for the sum of Two Million, Three Hundred Thirty-two Thousand ($2,332,000.00) Dollars, and bear interest at three and three-fourths (3 3/4%) per cent. per annum, payable semi-annually, and the bonds of Series "B" were for the sum of Four Hundred Twenty-five Thousand ($425,-000.00) Dollars, and bear interest at the rate of four per cent. (4%) per annum, payable semi-annually. All of the bonds of both series were dated June 1, 1936, and mature July 15, 1956. The bonds of Series "A" were numbered from One (1) to Two Thousand Three Hundred Thirty-two (2,332), both inclusive, and are of the denomination of One Thousand ($1,000.00) Dollars. The bonds of Series "B" are numbered from Two Thousand Three Hundred Thirty-three (2,333) to Two Thousand Seven Hundred Fifty-seven (2,757), both inclusive, and are of the denomination of One Thousand ($1,000.00) Dollars. The bonds of both series are subject to prior redemption in whole or in part at any interest payment date at the option of the County, at par and accrued interest. Provided, however, that none of the bonds of Series "B" shall be payable as to principal until all of the bonds of Series "A" shall first have been fully paid and redeemed. Provided, further, that no interest shall be paid on the

bonds of Series "B" unless and until the funds required to be set aside for the payment of the bonds of Series "A" shall have been first set aside.

The County Court order under which said bonds were issued provided that a specified sum shall be set aside annually, in monthly installments, in a fund to be known as "Toll Bridge Revenue Series 'A' Interest and Sinking Fund Account," to be used solely and only for the purpose of paying interest on the bonds of Series "A," and the principal of said bonds. That after said specified sum has been set aside, there shall then be set aside in a fund to be known as "Toll Bridge Revenue Series 'B' Interest and Sinking Fund Account," a sum of money to pay the interest on the "B" bonds, and after the "A" bonds have all been paid, then all of the income from the bridges is to be set aside for the purpose of taking care of the interest on and principal of the "B" bonds.

The said County Court order further provides that all funds in said interest and sinking fund account, in excess of the amount required to pay the interest in each calendar year, shall be used by the County for the purchase in the open market of bonds at not exceeding par and accrued interest; and that if bonds cannot be purchased in the open market, then the County shall call bonds for redemption on any interest payment date at par and accrued interest.

The said County Court order further provides that in the event of a sale of any of the property, the County shall apply the proceeds to the retirement of bonds, either by purchase or by call.

Section 2 of the said County Court order authorizing said bonds, provides that whenever it is desired to exercise the aforesaid right, the County Court of said County shall cause written notice thereof to be delivered to the bank or office at which said bonds are payable, and such notice shall be so delivered not less than thirty (30) days prior to the interest payment date designated for the redemption of such bonds, and shall set forth the number of the bonds thus called for redemption, and provides that notice shall also be given to the State Auditor of Missouri, and further provides for publication in some daily newspaper published in the City of St. Louis at least once a week for three consecutive weeks, the first publication to be not less than thirty days nor more than forty days prior to the date designated for the redemption of such bonds.

The County Court Order under which said bonds were issued, and the bonds themselves, contain the provision that said bonds may be called for redemption prior to maturity, but provide that the bonds of Series "A" shall first be called and redeemed before any of the bonds of Series "B" shall be called in, paid or redeemed.

Section 5 of the said County Court Order, provides that the principal of and the interest on said bonds shall not be payable in whole or in part from any funds arising from taxation, but shall be payable,

both as to principal and interest, wholly and only from the revenues received from the operation of said bridges, or from the proceeds of the sale of all or any part thereof.

The said County Court Order and the bonds themselves provide that the interest shall be payable semi-annually on the 15th day of July and the 15th day of January of each year; and the bonds contain the provision that they shall be callable at the option of the County at par and accrued interest on any interest payment date in the manner and upon giving of the notice provided for in said Court order, and that said bonds and interest are payable solely and only from a fixed amount of the gross income and revenues to be derived from the collection of tolls, collectible from traffic passing over and along the said bridges and approaches, and said bonds further contain the provision that they do not constitute an indebtedness of the County of St. Charles.

The Bonds of Series "A" contain a provision that the bonds of Series "B" shall not be paid and redeemed until all of the bonds of Series "A" shall first have been fully paid and redeemed, or until funds sufficient shall first have been provided and set aside for that purpose. And the bonds of Series "B" contain a provision that the bonds of Series "A" shall be payable and redeemable prior to the payment and redemption of the bonds of Series "B," and that none of the bonds of Series "B" shall be payable as to principal until all of said bonds of Series "A" shall have been paid in full both as to principal and interest, or until sufficient funds shall have been provided and set aside for that purpose.

Section 13 of the County Court Order aforesaid, provides that while any of the bonds authorized remain outstanding and unpaid, the County will not issue any additional bonds payable from the revenues of said bridges, unless the lien of such additional bonds on the revenues of said bridges shall be made junior and subordinate; but the County reserves the right to sell all or any part of the aforesaid properties, and in the event that only a part of said properties are sold, then the proceeds of the sale shall be credited to the "Toll Bridge Revenue Series 'A' Interest and Sinking Fund Account." And it is further provided that neither nor both of said bridges shall ever be sold for an amount less than the aggregate amount of all bonds of Series "A" and Series "B" then outstanding, in which event the proceeds shall be used to retire the outstanding bonds of both series.

Section 22 of said County Court Order provides that no provision of said Order shall ever be so construed as to call for or require the use or employment by the County of any funds arising from taxes levied and collected by the County towards the maintenance or operation of said bridges, nor shall it ever be construed to prohibit or prevent the County from applying any funds, except taxes, which

it may thereafter have, and coming from sources other than tolls collected for the use of said bridges, to the purchase or to the redemption and retirement of said bonds, in the order of their series.

On June 1, 1936, the County took charge of said bridges and has continuously operated said bridges since that date. After acquiring said property the County sold to the State Highway Commission of Missouri the roadways above referred to for the sum of One Hundred Seventy-five Thousand ($175,000.00) Dollars, which was paid off in five annual installments of Thirty-five Thousand ($35,000.00) Dollars each; said Thirty-five Thousand ($35,000.00) Dollars was paid into the series "A" Interest and Sinking Fund Account, and was used for the retirement of bonds of Series "A."

After taking charge of the property on June 1, 1936, the funds derived from the collection of tolls and the funds received from the State Highway Commission, as aforesaid, were paid into the funds provided for in said County Court Order of May 20, 1936, and during each six months' period thereafter, the County had an excess over the interest requirements, which sum was used to purchase bonds in the open market, and when it was unable to buy bonds, to call them at the respective interest dates. The County has either purchased bonds at each interest date or called bonds on such dates; sometimes it has been able to use some of the money to purchase bonds, and then the balance remaining in the fund has ██ been used to call bonds. In the last year or two the County has been unable to purchase any bonds in the open market, but has called them at par and accrued interest, as provided for in said order and in the bonds. In that way the County has been able to retire bonds totaling Seven Hundred Sixty-five Thousand ($765,000.00) Dollars, and there are now outstanding bonds of both series totaling One Million Nine Hundred Ninety-two Thousand ($1,992,000.00) Dollars. Of this amount, bonds of Series "A" totaling One Million Five Hundred Sixty-seven Thousand ($1,567,000.00) Dollars are outstanding, and bonds of Series "B" totaling Four Hundred Twenty-five Thousand ($425,000.00) Dollars are outstanding.

The County is now able to issue its Toll Bridge Revenue Refunding bonds at two and one-half (2½%) per cent interest per annum, and by the issuance of refunding bonds in the sum of One Million Nine Hundred Fifty Thousand ($1,950,000.00) Dollars it will be able to save one and one-fourth (1¼%) per cent interest per annum on its "A" bonds, and one and one-half (1½%) per cent interest on its "B" bonds and during the first year will be able to save more than Twenty-five Thousand ($25,000.00) Dollars in interest by refunding these bonds. It proposes to issue One Million Nine Hundred Fifty Thousand ($1,950,000.00) Dollars of refunding bonds, because it now has or will have in its treasury available for the retirement of bonds

on July 15, 1941, at least Forty-two Thousand ($42,000.00) Dollars, and possibly more.

The County Court determined to exercise its option to call in and redeem all of the outstanding bonds of Series ''A'' and Series ''B'' on July 15, 1941, the next interest payment date, by using funds now on hand or available on that date, and by issuing its refunding bonds in the sum of One Million, Nine Hundred Fifty Thousand ($1,950,-000.00) Dollars, which bonds it has contracted to sell at par, and which bonds will bear interest from May 15, 1941, at two and one-half per cent (2½%) per annum. On April 11, 1941, the County Court entered an order calling in all of the bonds of Series ''A'' on July 15, 1941, and provided in said order for the giving of the notice required by the Order authorizing the issuance of said bonds.

And thereafter, on the same day, the Court exercised its option to call in and pay all of the ''B'' bonds now outstanding.

On the 12th day of April, 1941, the Court then entered an order authorizing the issuance of One Million, Nine Hundred Fifty Thousand ($1,950,000.00) Dollars of refunding bonds, said order providing that said refunding bonds shall bear date of May 15, 1941, and shall mature on June 30, 1956, shall be numbered from 1 to 1,950, both inclusive, shall be of the denomination of One Thousand Dollars ($1,000.00) each, and shall bear interest at two and one-half (2½%) per cent per annum, payable December 31, 1941, and semi-annually thereafter, on June 30th and December 31st of each year; said order and said bonds to be issued thereunder to contain a provision that the refunding bonds are to be issued for the purpose of refunding at a lower rate of interest the present outstanding Toll Bridge Revenue Bonds of said County, dated June 1, 1936, and called for redemption July 15, 1941; that the tolls from said bridges are to be set aside in a special fund to be known as ''Toll Bridge Revenue Refunding Bonds Interest and Sinking Fund;'' that said bonds do not constitute an indebtedness of the County of St. Charles, within the meaning of any constitutional or statutory provisions or limitations; and further provides that a lien in favor of the holders of said bonds shall attach to such income and revenues until payment in full of the principal and interest of said bonds. Said Court Order further provides that said refunding bonds may be purchased in the open market or may be called for redemption at any interest payment date.

The County Court Order of April 12, 1941, authorizing the issuance of said refunding bonds, provides that, when registered by the State Auditor as required by law, said bonds shall be delivered into the custody of the County Treasurer of St. Charles County, and said Treasurer shall thereupon deliver said refunding bonds to the purchaser in accordance with the terms of the sale of said bonds; that the proceeds received upon the sale and delivery of said refunding bonds shall immediately be deposited in the First National Bank in St.

Louis, to be held and used solely and only for the payment on the 15th day of July, 1941, of the outstanding toll bridge revenue bonds of said County, dated June 1, 1936, which have been called in for payment and redemption on July 15, 1941.

The said County Court Order of April 12, 1941, contains the further provision that none of said refunding bonds shall be re ▇ paid in whole or in part from any funds arising from taxation, nor shall any such bonds or liens given constitute a lien on any other property of St. Charles County, or constitute a pledge of the credit of said County, and that when said bonds have been redeemed, no further toll shall be charged for the use of said bridges by the traveling public.

The Relator herein presented Refunding Bond No. 1 to the respondent herein for registration, as required by law, and said respondent refused to register said bond, and thereupon this proceeding to require the registration of said bond and all of the other bonds authorized under said County Court Order of April 12, 1941, was begun.

I. The county acquired, and has ever since owned and operated the toll bridges in question under the provisions what are now Secs. 8547-8551, R. S. '39 [Secs. 7907c-7907g, Mo. Stat. Ann.] enacted at the Extra Session of 1933-34 (Laws 1933-34, Ex. Sess., p. 115). That act authorized the issuance of toll bridge revenue bonds for the purpose of acquiring, operating and maintaining toll bridges by counties, municipalities and other political or civil subdivisons of a county or the State; and provided for the collection of "a reasonable toll . . . the amount of which shall be sufficient to pay the reasonable cost of maintaining, repairing and operating such bridge and to provide a sinking fund sufficient to amortize and repay" the loan, "and said tolls shall be used for no other purpose." The act further provides, among other things, (1) that liens may be given "pledging the revenue derived from the toll from such toll bridges . . . to the retirement of such bonds;" (2) that "no revenue bonds or liens securing such bonds shall be repaid in whole or in part from any funds arising from taxation;" (3) "that at such time when all moneys borrowed as aforesaid shall have been repaid, together with interest and charges thereon, no further toll shall be charged for the use of such bridges by the traveling public." We upheld the constitutionality of the act in State ex rel. City of Hannibal v. Smith, State Auditor, in 335 Mo. 825, 74 S. W. (2d) 367. We agree with relator that the act had a two-fold purpose: First, to provide for public acquisition or construction of bridges over and across any of the rivers and waters in or forming the boundary between this or other states; and, second, to make such bridges toll-free as soon as possible.

The first ground upon which respondent has refused to register the bond tendered is that the act, supra, "does not authorize the issuance of such bonds, and there is no authority in law authorizing

the refunding of Toll Bridge Revenue Bonds.'' It is true the statute does not, in express terms, directly authorize the issuance of refunding revenue bonds, so the question is reduced to the proposition as to whether such authority is necessarily or fairly to be implied as an incident to the power expressly granted to issue revenue bonds. And, this, we think, must be answered in the affirmative. The Court of Appeals of Kentucky has passed on a similar question in State Highway Commission v. King, 259 Ky. 414, 82 S. W. (2d) 443, and because of the similarity of the statute construed, and the clear holding of the court, we adopt the reasoning of that case, as follows: ''Although there is no specific statutory authority for such procedure (issuance of bridge revenue refunding bonds), the commission clearly has the implied power to issue and sell refunding bonds. The act creating the highway commission vests it with broad powers, and the toll bridge acts of 1928 and 1930 impose upon the commission the duty to operate and control the bridges built or purchased under the provisions of the acts in such a manner as to pay off the indebtedness at the earliest possible date, and thus to free them to the use of the traveling public. This clearly expressed purpose runs through these acts, and it was evidently the intention of the Legislature to make it the duty of the commission in the exercise of its sound discretion to operate and maintain the bridges, fix the toll rates, and finance the costs so as to accomplish the primary object of the Legislature, to-wit, the acquirement of bridges free of tolls as a part of the State primary system of highways at the earliest possible date. *The implied power to refund outstanding bonds at a lower interest rate and thus, in effect, to reduce the indebtedness is a necessary incident of the powers expressly conferred in view of the purpose of the toll bridge acts.*'' (Italics ours.) [See, also, Cook v. City of Louisville, 260 Ky. 474, 86 S. W. (2d) 157; Security Trust Co. v. City of Paris, 264 Ky. 846, 95 S. W. (2d) 781; State ex rel. v. Yelle, 105 Pac. (2d) 813; State ex rel. v. Cave, 193 La. 419, 190 So. 631.]

The issuance of the refunding revenue bonds in question would effectuate the purposes of the statute by materially reducing the fixed charges by way of interest, and thereby make additional funds available for debt retirement, and so accelerate the freeing of the bridges from tolls. The implied power so to do should be, and it is held to exist.

II. It is urged that the bondholders cannot be compelled to accept payment from funds derived from sources other than revenue received from the operation of the bridges, or from a sale thereof. A sufficient answer to which is to say that the refunding bonds are payable ''only out of the Toll Bridge Revenue Refunding Bonds Interest and Sinking Fund'' (in short, from revenue derived from the operation of the bridges and not otherwise.) This being true, and having held the

county has authority to issue the refunding bonds, it is apparent that, under the facts here presented, no question of payment from funds derived from other sources is involved.

III. A period of two months will elapse between the date of the execution of the refunding bonds (May 15, 1941) and the date (July 15, 1941) at which the outstanding bonds 'have been called for payment. It is contended that during such period the county will owe, not only the amount of the outstanding revenue bonds, but the amount of the refunding bonds, as well, and upon both of which issues it will be obligated to pay interest, thus rendering the proposed transaction invalid.

The order of the county court authorizing the refunding bonds provides that when the same are executed, etc., they "shall be delivered into the custody of the County Treasurer of said St. Charles County, Missouri, and the said Treasurer shall thereupon deliver the said refunding bonds ·to the purchasers thereof in accordance with the terms of sale and award. The principal proceeds received upon sale and delivery of said refunding bonds shall immediately be deposited in the First National Bank in St. Louis (the paying agent designated in the outstanding bonds), to be held and used solely and only for the payment, on the 15th day of July, 1941, of the aforesaid outstanding Toll Bridge Revenue Bonds of said County, dated June 1, 1936, which have been called in for payment and redemption on said 15th day of July, 1941.''

It is well-settled that the issuance of refunding bonds to retire a valid outstanding bonded indebtedness (bonded indebtedness incurred pursuant to a vote of the people) does not create a new indebtedness, but *"merely changes the form of an existing debt."* (Italics, the present writer's.) [State ex rel. v. Smith, 343 Mo. 288, 121 S. W. (2d) 160, citing 97 A. L. R. 442, 44 C. J., p. 1132, par. 4065, 1 Dillon on Municipal Corporations, par. 202.] Neither the outstanding bonds nor the refunding bonds in question are payable out of taxes. Nor are said bond issues, or either of them, debts of the county, within the meaning of Section 12 of Article X of the Constitution of Missouri. [State ex rel. City of Hannibal v. Smith, supra.]

We approve the view taken by the Florida Supreme Court in Fleeman v. City of Jacksonville, 191 So. 840, where in discussing the matter of the lapse of time (in that case, from December, 1939, to February 15, 1940) between the maturity of outstanding bonds and the issuance of refunding bonds, it was said, "In the very nature of the transaction, it would generally be impracticable to provide for cancellation of the outstanding bonds simultaneously with the issue of the refunding bonds. The outstanding bonds mature on fixed dates and the law contemplates that the proceeds of the refunding will be at the place of payment to take the place of principal and interest of the outstanding bonds when they mature. All this should be done

as expeditiously as circumstances will permit but the fact that there is a reasonable lapse between the maturity of the outstanding bonds and the issue of the refunding bonds in no sense increases the indebtedness or makes outstanding both sets of bonds at the same time.''

The fact that there will be an overlapping of two months during which the county may be liable for interest on both issues is unimportant and without effect. What has been said above necessarily disposes of the related points, (1) that both issues will be outstanding, and (2) that the issuance of the refunding bonds will violate the covenant in the original order of the county court prohibiting the issuance of additional bonds unless the lien thereof is subordinate to the lien of the outstanding bonds.

IV. Nor is there any substance in the proposition that relator will have no authority to charge tolls for the use of the bridges after the outstanding original bonds have been retired. This effect is said to flow from the language of the proviso forming a part of Section 8548, supra, reading as follows: *''and provided further,* that at such time when all moneys borrowed *as aforesaid* shall have been repaid, together with interest and charges thereon, no further tolls shall be charged for the use of such bridges by the traveling public.''

We are unable to assent to any such construction for the reason that ''all moneys borrowed'' will not have been repaid, within the meaning of the statute, upon the redemption of the outstanding bonds, by merely substituting for them the issue of refunding revenue bonds in question.

V. This brings us to a consideration of the one remaining point briefed, that is, that bonds of Series ''B'' are not now callable for the reason that, as a condition precedent to the calling thereof all bonds of Series ''A'' must be first paid and redeemed.

The bonds of Series ''A'' provide that the bonds of Series ''B'' shall not be paid and redeemed until all of the bonds of Series ''A'' shall first have been fully paid and redeemed or until funds sufficient shall first have been provided for and set aside for that purpose. The bonds of Series ''B'' provide that the bonds of Series ''A'' shall be payable and redeemable prior to the payment and redemption of the bonds of Series ''B,'' and none of the bonds of Series ''B'' shall be payable as to principal until all of said bonds of Series ''A'' shall have been paid in full, both as to principal and interest, *or until sufficient funds shall have been provided and set aside for that purpose.*

We agree with relator that these provisions in the bonds, and in the court order as well, were not for the purpose of protecting the bonds of Series ''B,'' but for the purpose of protecting the holders of the ''A'' bonds. In other words, it was not the intention to give the ''B'' bondholders a right to see that ''A'' bonds were paid first, but to

protect "A" bondholders against dissipation of tolls by the payment of "B" bonds. Under the proposed plan of refinancing, whereby the bonds of both series have been called for redemption on the same day, and which provides for the deposit (for the purposes in the county court's order recited, and which has been set out earlier in this opinion), of the proceeds from the sale of the refunding bonds with the paying agent named in the original bonds, bondholders of both series have been given their full measure of protection. The fact that a recalcitrant "A" bondholder refuses to surrender his holdings on a proper and valid call would not have the effect of defeating the redemption of the "B" issue, because, under the facts we are considering, sufficient funds will have been provided and set aside for the purpose of satisfying all his claims and demands.

From what has been said, it follows that relator is entitled to a peremptory writ of mandamus. It is so ordered. All concur.