(No. 26545.—)

THE PEOPLE *ex rel.* The City of Rock Island, Petitioner, *vs.* MARTIN T. RUDGREN, individually and as City Clerk of the City of Rock Island, Respondent.

*Opinion filed December 29, 1941.*

ALLAN A. KLOVE, and SINNETT & BRITTON, for petitioner.

LEO J. HERBERT, for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an original proceeding in *mandamus* by which petitioner seeks a writ requiring that respondent, as city clerk of the city of Rock Island, sign and attest certain bridge refunding bonds, sought to be issued by petitioner, the city of Rock Island.

The petition recites that petitioner owns and operates a bridge across the Mississippi river between Rock Island, Illinois, and Davenport, Iowa; that said bridge was constructed pursuant to an act of Congress approved March 18, 1938; that in order to defray the costs of constructing said bridge the petitioner issued bridge revenue bonds in

the principal amount of $2,500,000, dated February 1, 1939, bearing interest at the rate of four per cent per annum, and maturing by their terms on February 1, 1964. These bonds were issued pursuant to power and authority granted by article 28 of the Cities and Villages act. Ill. Rev. Stat. 1941, chap. 24, p. 423.

The refunding bonds sought to be issued are, as are those now outstanding, payable solely out of revenues derived from the operation of the bridge and are not obligations of the city. The outstanding bonds are, by their terms, redeemable prior to their maturity, at the option of the petitioner, on any interest payment date during the period from February 1, 1941, to and including February 1, 1946, upon giving thirty-days' notice of intention so to do, and payment of the principal amount of the bonds at par with accrued interest and a premium of five per cent of the principal amount remaining unpaid. The next interest payment date is February 1, 1942, and petitioner has asked that the cause be advanced for early decision, so that if the writ is awarded the necessary notice may be given within the time required by the bonds, thus preventing postponement of redemption for another year.

The petition alleges that, as of October 27, 1941, there remained of those bonds, outstanding and unpaid, $2,493,000; that petitioner has sufficient funds to pay all interest due on February 1, 1942, together with the redemption premium of five per cent. It is also alleged that petitioner has found it possible to issue and sell new bridge revenue refunding bonds to redeem the outstanding bonds at an interest charge of two and nine-tenths per cent per annum and to dispose of the same for an amount sufficient to pay the principal of all outstanding bridge revenue bonds, thus effecting a saving in interest charges of approximately $27,300 per annum. The petition alleges that in accordance with such plan an ordinance was adopted by petitioner providing for the issuance of $2,493,000 of

bridge revenue refunding bonds, to provide funds for the redemption of the outstanding bridge revenue bonds, same to be dated February 1, 1942, to mature February 1, 1967, to bear interest at the rate of two and nine-tenths per cent per annum, and to be redeemable at the option of the petitioner at par on any interest payment date by paying a premium as provided in the bonds sought to be authorized. The ordinance also provides that the outstanding bridge revenue bonds be redeemed February 1, 1942, and that in accordance with the terms of those bonds thirty days' notice be given of intention to redeem them.

The petition also avers that the statute authorizing construction of the bridge provides that tolls may be charged for its use until the cost of construction is paid, after which the bridge shall be operated as a free bridge for the use of the general public, and because of the saving caused by the issuance of refunding bonds, it is anticipated that the retirement of the new bonds will be greatly accelerated, and correspondingly, the free public use of the bridge earlier attained. It is also averred that petitioner has entered into an agreement for the sale of such refunding bonds at a price sufficient to pay all monies due on the bridge revenue bonds on the date contemplated for their redemption, *i.e.,* February 1, 1942.

The refunding bonds are to be signed by the mayor of Rock Island, and sealed with the corporate seal of the city, attested by the city clerk. The petition sets forth that respondent city clerk has refused to affix the corporate seal and to attest the refunding bonds or any of them, on the ground that petitioner is without power or authority to issue such bonds, and unless he is required so to do, the city will be unable to deliver them to the purchaser, will be deprived of the savings in interest charges, and the use of the bridge as a free bridge will be greatly delayed.

Respondent has moved to dismiss the petition. An issue of law is thus raised, and is whether the city of Rock Island

may lawfully issue refunding bonds to redeem the outstanding bridge bonds. That question is one of first impression with this court. Counsel all agree that the act, hereinbefore cited, under which the bridge was constructed and the original bridge revenue bonds issued, does not specifically authorize petitioner to issue bonds to refund the bonds originally issued, and respondent urges that because this is so the refunding bonds proposed are invalid. In support of this contention he cites *People* v. *Thompson,* 377 Ill. 244, and *Coquard* v. *Village of Oquawka,* 192 id. 355, wherein this court held that a local governmental body has no inherent power to issue bonds and in the absence of express statutory authority such power cannot be implied merely from the ordinary powers of a municipal corporation. The bonds involved in those cases were debts of the municipality, and petitioner contends that where, as here, the bonds are to be paid solely out of bridge revenues, and the bridge under the act is to become a free bridge when so paid for, the act authorizing such bridge revenue bonds, by implication, gives to the city authority to refund those bonds with bridge revenue bonds which will lessen the cost of the bridge and advance the free use of it as a highway and that, in effect, the issuance of these refunding bonds is a substantial payment on the obligation represented by the outstanding bonds sought to be refunded.

In support of petitioner's contention that it has implied power to issue refunding bonds in payment of outstanding bridge revenue bonds, in this case, its counsel cite *State* v. *Smith,* 152 S.W. (2d) (Mo.) 1, where the identical question was presented involving a Missouri statute similar to ours in that it did not expressly provide for the issuance of refunding bonds, but only for the issuance of bridge revenue bonds. The court there held that since it was the obvious purpose of the legislature, by such an act, to provide for bridges across waters forming boundaries of the State and waters within the State, the use of which was

ultimately to become free to the general public, the issuance of the refunding revenue bonds in question would effectuate the purpose of the statute by materially reducing the fixed charges by way of interest, and thereby make additional funds available for debt retirement, and so accelerate the freeing of the bridge from such tolls. The implied power so to do should be, and it was, held to exist.

The Supreme Court of Kentucky in *Commission* v. *King,* 259 Ky. 414, 82 S.W. (2d) 443, in discussing refunding bridge bonds sought to be issued under a similar statute said: "The implied power to refund outstanding bonds at a lower rate of interest and thus, in effect, to reduce the indebtedness, is a necessary incident of the powers expressly conferred, in view of the purpose of the toll bridge acts." To like effect is *State* v. *Yells,* 105 Pac. (2d) (Wash.) 812, where the court held that toll bridge officials had implied power to issue refunding bonds, both from the language of the statute there involved and from the policy of the State to operate free highways and bridges, and that it is reasonable to assume that the legislature had in mind that the toll bridges constructed under the act would be free from tolls as soon as possible. Other authorities so holding are *Cook* v. *City of Louisville,* 86 S.W. (2d) (Ky.) 157, and *State* v. *Board of Liquidation,* 182 So. (La.) 661.

The Illinois statute, herein cited, under which petitioner constructed and financed its bridge, is similar to the statutes in the cases just discussed. By section 2 of article 28 the city is given explicit power to purchase or construct a bridge, to acquire necessary lands and to borrow money and issue bonds payable from the net revenue of the bridge constructed. Paragraph 6 of said section 2 gives the municipality power "to make contracts of every kind and nature and to execute all instruments necessary or convenient for the carrying out of the purposes of this article." One evident legislative purpose of the enactment was to provide

for the building of bridges over rivers forming State boundaries, which bridges shall become, when paid for, free bridges. Section 5 of article 28 of the act so provides. Such provisions and purposes indicate the public policy of this State to provide highways and bridges free and open to the public use.

The refunding bonds here sought to be issued, by which a large saving in interest may be applied to payment of the bonds, may properly be said to come within the purpose of the powers granted by paragraph 6 *supra*, "to make contracts of every kind and nature and to execute all instruments necessary or convenient for the carrying out of the purposes of this article."

As pointed out, the proposed bonds do not represent a debt of the city nor the perpetuation of such a debt. They put no new or increased obligation on the city or its taxpayers. We are of the opinion that petitioner has authority to issue these refunding bonds, and it is the duty of respondent to properly attest them as city clerk. The writ of *mandamus* is awarded directing respondent to affix to these refunding bonds the corporate seal of the city of Rock Island, together with his attestation thereto.

*Writ awarded.*