399 P.2d 252

Edna ADAMS, Plaintiff-Appellant,

v.

George PRITCHARD, Harold Conn, Dortha
Bills, Howard Thomas, and Evan Siggel-
kow, Members of the Board of Trustees of
the Village of Garden City, Idaho, and
the Village of Garden City, Idaho, Defend-
ants-Respondents.

No. 9574

Supreme Court of Idaho.

Feb. 18, 1965.

Cosho & Humphrey, Boise, for respondents.

John H. Fairchild, Boise, for appellant.

TAYLOR, Justice.

Plaintiff (appellant) brought this action as citizen, resident and property owner of the village of Garden City, against the village and the board of trustees of the village, defendants (respondents), seeking a declaratory judgment declaring null and void a resolution adopted by the board June 1, 1964, providing for the refunding of outstanding water and sewer revenue bonds.

The parties stipulated that the facts are undisputed and are as alleged in plaintiff's complaint. The water and sewer revenue bonds were issued and sold by the village in the year 1957, pursuant to the Revenue Bond Act. S.L.1951, c. 47, compiled as I.C. §§ 50–2812 through 50–2827. Of the original issue of $400,000 in bonds, some $330,000 are still outstanding and unmatured. The outstanding bonds are owned by the Housing and Home Finance Agency, an agency of the United States government. The agency has offered to surrender such bonds to the village upon payment of the principal thereof, and interest accrued to the date of surrender. The village has ascertained that it may issue and sell refunding bonds, for the purpose of retiring outstanding bonds of the original issue, at a lower rate of interest than that payable on the outstanding bonds, thus effecting a saving to the users of the water and sewer services in excess of $20,000.

The board of trustees of the village at a regular meeting, June 1, 1964, adopted a resolution providing for issuance and sale of refunding revenue bonds, at a lower rate of interest; providing for the use of the proceeds of the sale for the payment and redemption of the outstanding water and sewer revenue bonds; providing that the refunding revenue bonds shall be a lien against the combined water and sewer utility constructed with the proceeds of the sale of the original water and sewer bonds; and providing that the interest and principal of the refunding revenue bonds shall be paid out of the future revenues of the combined utility in the same manner as was provided for the payment of principal and interest of the outstanding bonds.

In the district court the plaintiff contended that the village had no legal power or authority to issue and sell the proposed refunding bonds, for the reason that there is no express or implied power given by law to the village for that purpose; and

further, that the village board had no power to provide for refunding of such bonds by resolution rather than by ordinance or election of the residents and taxpayers of the village.

The district court entered its judgment in favor of the defendants, adjudging that the village had the power to issue the refunding bonds and to do so by resolution. From the judgment the plaintiff brought this appeal.

■ The issues here are the same as those presented to the district court. The Revenue Bond Act of 1951 contains no express authorization for refunding of outstanding municipal revenue bonds. However, it does clearly imply such authority. Idaho Code § 50–2813, in declaring the legislative policy in the enactment of the Revenue Bond Act, recites that the municipal works therein authorized shall be managed in the most efficient manner consistent with sound economy to the end that the services provided thereby shall be furnished users at the lowest possible cost, and that such works shall not be operated as a source of revenue to the village, but for the benefit of those served. The saving to users by means of refunding the outstanding bonds at a lower rate of interest, is in harmony with, and in furtherance of, the legislative policy declared by the act.

Idaho Code § 50–2821, of the act, authorizes the municipality, in issuing the original bonds, to provide for their maturity at "such time or times" as it chooses, and to provide that the bonds "may be redeemable before maturity at the option of the municipality, may be payable in such medium of payment, at such place or places, may carry such registration privileges, may be subject to such terms of redemption, may contain such terms, covenants, and conditions, and may be in such form either coupon or registered, as such ordinance may provide."

■ The record does not contain a copy of the ordinance providing the terms and conditions of the original bonds, nor a copy of one of the bonds, and for the present purpose we assume that no provision was made in either, for the payment of such bonds by means of a refunding bond issue. The village, of course, could not provide for payment or redemption of the bonds other than as provided by the original contract with the bondholders, as evidenced by the ordinance and the bond. However, the terms of that contract are of no importance in this connection because the bondholder is willing to accept payment in advance of maturity, with interest to the date of redemption only. The important consideration here is that the legislature authorized the village to provide, in the original issuance of the bonds, for redemption before maturity at its option, for terms of redemption, and for the

medium of payment. I.C. § 50–2821. Whether it exercised that authority is also beside the point. The authority given is still with the village and, the holder of the outstanding bonds being willing to accept modification of the original contract —payment before maturity—the village may now exercise that authority. The statute clearly implies the authority of the village to issue and sell the proposed refunding revenue bonds, to provide the means of payment and redemption, before maturity, of the outstanding unmatured water and sewer revenue bonds, when such can be done without increasing the outstanding indebtedness, and with a saving to those served by the works.

The Revenue Bond Act makes specific reference to the "Municipal Bond Law." (S.L.1927, c. 262). Idaho Code § 50–2821 of the Revenue Bond Act, provides that revenue bonds issued under authority thereof shall be sold, executed and delivered in the same manner as provided by the "Municipal Bond Law" for the sale of general obligation bonds of municipalities.

The original municipal bond law authorizes the refunding of general obligation bonds of municipalities as follows:

"3. To provide for the funding, refunding, purchase and redemption of the outstanding indebtedness of such municipal corporation. Bonds may be issued under this section for the purpose of funding, refunding, purchase or redemption of the outstanding indebtedness of any such municipal corporation when the same can be done to the profit and benefit of such municipal corporation, and without incurring any additional liability, without submission of the question of issuance of such bonds to the electors of the municipal corporation." I.C. § 50–2801(3).

The "Municipal Bond Law" of 1927 (I.C. §§ 57–201—57–218) authorizes the funding and refunding of general obligations of municipalities, in part, as follows:

"If any governing body shall determine that the oustanding indebtedness of any such corporation may be funded or refunded, to the profit and benefit of such corporation and without incurring any additional liability by the issuance of funding or refunding bonds, it may provide by ordinance or resolution for the issuance of such funding or refunding bonds in an amount equal to the unpaid principal and interest of such outstanding bonds or other indebtedness: * *." I.C. § 57–218.

The reference to the "Municipal Bond Law" for the manner of ex-

ecution and sale of revenue bonds indicates that the conditions and procedure provided by that law for refunding general obligations, shall also apply to refunding of revenue bonds, and that the refunding revenue bonds may be authorized, issued and sold either by ordinance or resolution and without a vote of the electors of the village. I.C. § 50–2801(3), as amended; Marsing v. Gem Irrigation District, 56 Idaho 29, 48 P.2d 1099 (1935); 5 McQuillin, Municipal Corporations, 3rd Ed., § 15.02.

The following authorities support defendants' position and the decision reached herein: State ex rel. Washington Toll Bridge Authority v. Yelle, 5 Wash.2d 539, 105 P.2d 813 (1940); State v. City of Miami, 155 Fla. 180, 19 So.2d 790, 1 A.L.R.2d 132, Anno. 134, (1944); State v. Escambia County, 52 So.2d 125 (Fla. 1951); People ex rel. City of Rock Island v. Rudgren, 378 Ill. 408, 38 N.E.2d 723 (1941); Cook v. City of Louisville, 260 Ky. 474, 86 S.W.2d 157 (1935); State Highway Com. v. King, 259 Ky. 414, 82 S.W.2d 443 (1935); State ex rel. St. Charles County v. Smith, 348 Mo. 7, 152 S.W.2d 1, 135 A.L.R. 625, Anno. 634, (1941); Du Val v. City of Little Rock, 227 Ark. 612, 300 S.W.2d 19 (1957). See also: Reichenberger v. Salt River Project, etc. District, 61 Ariz. 465, 150 P.2d 758 (1944); Hoehamer v. Village of Elm-wood Park, 361 Ill. 422, 198 N.E. 345, 102 A.L.R. 196, Anno. 202, (1935); 43 Am. Jur., Public Securities & Obligations, § 159.

Judgment affirmed. No costs allowed.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.