Honorable Thomas M. Keyes State Auditor State Capitol Building Jefferson City, Missouri 65101
Dear Mr. Keyes:
This opinion is in response to your question asking:
 "Should the State Auditor's Office register $1,770,000 Refunding Building Bonds of Sedalia School District No. 200 of Pettis County, Missouri?"
The facts as they appear from your correspondence and correspondence of attorneys representing the school district are that the State Auditor's Office has been asked to register advance refunding bonds. The proceeds from the sale of the bonds will be invested in United States Government securities which have maturity dates corresponding with the dates on which the originally issued bonds mature or are callable. The original bonds are general obligation bonds with a redemption call feature. As provided by law, they were issued on October 14, 1970; and a principal balance of $1,870,000 remains outstanding. The unpaid bonds mature from 1978 to 1990 at an average annual interest rate of 6.1015%. The refunding building bonds as authorized under the resolution of the Sedalia School District No. 200 bear an average annual interest rate of 5%. An escrow trust agreement has been executed and the proceeds of the refunding bond will be deposited in the escrow trust account with authority of the escrow trustee to invest the proceeds in United States Government securities. Upon the payment in full, the principal of and interest on the outstanding bonds, all remaining moneys and escrow securities in the escrow account, together with any interest thereon, shall be transferred to the school district sinking fund created and maintained exclusively for the purpose of holding funds to pay the principal and interest on all of the school district's outstanding general obligation bonds. A number of the outstanding bonds will mature between the writing of this opinion and the redemption call which is eight years hence. The refunding bonds will be used to retire the outstanding bonds as they mature. Any remaining outstanding bonds shall be redeemed under the redemption call eight years from the date of issuance of the refunding bonds. None of the proceeds from the refunding bond issue including interest shall be used for any other purpose.
Section 108.240, RSMo 1969, requires that any bond hereafter issued by any school district in order to be valid must be first presented to the State Auditor who shall register the same as required by law.
Applicable law includes Article VI, Section 28 of the Missouri Constitution, which says:
 "For the purpose of refunding, extending, and unifying the whole or any part of its valid bonded indebtedness any county, city, school district, or other political corporation or subdivision of the state, under terms and conditions prescribed by law may issue refunding bonds not exceeding in amount the principal of the outstanding indebtedness to be refunded and the accrued interest to the date of such refunding bonds. The governing authority shall provide for the payment of interest at not to exceed the same rate, and the principal of such refunding bonds, in the same manner as was provided for the payment of interest and principal of the bonds refunded."
Section 164.191, RSMo 1969, provides in part:
 "The board of any school district may issue funding and refunding bonds for the district, in accordance with sections 108.140 to 108.170, RSMo. . . ."
Section 164.201, RSMo 1969, provides in part:
 ". . . The board also may sell the refunding or renewal bonds for cash if in its judgment it will be to the interest of the school district; . . . and all sums of money realized from the sale of refunding or renewal bonds shall be used in the redemption of outstanding bonds of the school district."
Section 108.140, RSMo 1969, provides:
 "The various counties in this state for themselves, as well as for and on behalf of any township, or other political subdivision for which said counties may have heretofore issued any bonds, and the several cities, school districts or other political corporations or subdivisions of the state, are hereby authorized to refund, extend, and unify the whole or part of their valid bonded indebtedness, or judgment indebtedness, and for such purpose may issue, negotiate, sell and deliver refunding bonds and with the proceeds therefrom pay off, redeem and cancel the bonds to be refunded as the same mature or are called for redemption, or pay and cancel such judgment indebtedness, or such refunding bonds may be issued and delivered in exchange for and upon surrender and cancellation of the bonds and coupons refunded thereby, or such judgment indebtedness. In no case shall said refunding bonds exceed the amount of the principal of the outstanding bond or judgment indebtedness to be refunded and the interest accrued thereon to the date of such refunding bonds. No refunding bond issued as provided herein shall be payable in more than twenty years from the date thereof and such refunding bonds shall be of the denomination of not more than one thousand dollars nor less than one hundred dollars each, and shall bear interest not to exceed the same rate as the bonds refunded, or judgment indebtedness, payable annually or semiannually, and to this end each bond shall have annexed thereto interest coupons, and such bonds and coupons shall be made payable to bearer; provided, that nothing in this section shall be so construed as to prohibit any county, city, school district, or other political corporation or subdivision of the state from refunding its bonded indebtedness without the submission of the question to a popular vote." (Emphasis added)
In the matter at hand, the problem is issuing refunding bonds eight years in advance of the redemption call of the outstanding bonds while paying off some of the outstanding bonds as they mature during the eight year period. There appears to be no question under the above statutes and cases herein cited that refunding bonds can be legitimately issued by a school district. The question is can this type of refunding bond be so issued? Significant in this regard is State ex rel. St. CharlesCounty v. Smith, 152 S.W.2d 1 (Mo.Banc 1941), involving an issue to toll bridge revenue refunding bonds. The refunding bonds were to be issued two months prior to the call date for the outstanding bonds to be redeemed. During the two month period, the proceeds from the sale of the refunding bonds were to be held by a bank exclusively for the purpose of paying off the outstanding bonds on the call date. The court therein concluded that it was impractical to provide for cancellation of outstanding bonds simultaneously with the issue of the refunding bonds and further stated:
 ". . . `. . . All this should be done as expeditiously as circumstances will permit but the fact that there is a reasonable lapse between the maturity of the outstanding bonds and the issue of the refunding bonds in no sense increases the indebtedness or makes outstanding both sets of bonds at the same time.'" Id. at 7
Thus, the court further concluded that refunding bonds are not indebtedness in violation of the double debt prohibition in the Constitution.
In the case at hand, the proceeds of the refunding bonds are invested for an eight year period rather than being held for a shorter period of time until the remaining outstanding bonds are be called as in the Smith case. Some of the outstanding bonds mature and are refunded during the eight year period. Pursuant to Section 108.140, the outstanding bonds are being paid off as they mature with proceeds of the refunding bonds.
Other jurisdictions have considered the problem. City ofAlbuquerque v. Gott, 389 P.2d 207 (N.M. 1964); State v. City ofMelbourne, 93 So.2d 371 (Fla. 1957); Rodin v. State, 417 P.2d 180
(Wyo. 1966); Beaumont v. Faubus, 394 S.W.2d 478 (Ark. 1965). These states have approved refunding bond issues in similar circumstances ranging from several years to fifteen years in lapse of time from the issue of the refunding bonds to the redemption or maturing of the outstanding bonds. There is no Missouri case precisely on all fours with the facts in this opinion. We are limiting our opinion to the precise facts.
It has been suggested that Sections 108.140 through 108.170
be compared to Sections 108.400 and 108.405, RSMo Supp. 1975. A comparison reveals that the latter sections do not pertain to the subject matter of this opinion. They pertain to counties of the first class having a charter form of government and a particular type of refunding bond in connection with such counties solely. Section 108.405 places a limitation n such refunding bonds which is dissimilar to the Section 108.140 bonds. Thus, we do not believe Sections 108.400 and 108.405 to be applicable to this opinion.
In the cases which we have reviewed including the Smith
case and cases in other jurisdictions, one main theme permeates the entire area. The theme is to consider the resulting savings to the taxpayers in the issuance of the refunding bonds. We are aware that there is a resulting savings in this case in excess of $200,000 to the taxpayers of the Sedalia School District. Our view rests on the premise that the school district has committed the proceeds of the refunding bond including interest to the payment of the outstanding bonds. By doing so, prior to the redemption call the district is able to take advantage of a favorable market place and save the taxpayers a substantial amount of money. The district cannot use the refunding bonds for any other purpose which would deny the taxpayers an opportunity to vote on a new program as contemplated by law. Thus, there must be a binding escrow agreement creating the sinking fund to insure that the proceeds and interest are properly used.
Having reviewed the statutes, related cases, and public policy, our view is that the refunding bonds contemplated by the Sedalia School District No. 200 are proper and that the State Auditor should proceed to register them.
CONCLUSION
It the opinion of this office that the State Auditor does have authority to register refunding building bonds of the Sedalia School District No. 200 of Pettis County, Missouri. Our opinion is limited solely to the facts presented.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Terry C. Allen.
Yours very truly,
 JOHN ASHCROFT Attorney General