307 S.E.2d 467

**CITY OF FAIRMONT, etc.**

v.

**INVESTORS SYNDICATE OF AMERICA, INC. and The Municipal Bond Commission, etc.**

No. 15679.

Supreme Court of Appeals of West Virginia.

July 6, 1983.

As Amended on Denial of Rehearing Oct. 14, 1983.

George R. Higinbotham, Higinbotham & Higinbotham, Fairmont, for appellant.

Allen R. Prunty & Robert L. Elkins, Jackson, Kelly, Holt & O'Farrell, Charleston, for appellees.

**HARSHBARGER, Justice:**

In 1955, the city of Fairmont sold eight hundred $1,000 municipal improvement bonds to finance a bridge rebuilding project. All of the bonds were bought by Investors Syndicate of America and had to be redeemed from bridge tolls at maturity on August 1, 1985, if not sooner.

In September, 1981, Investors Syndicate still owned all the outstanding bonds, and $20,825 interest was due for the then current twelve-month period. The sinking fund from which these payments were to be made had a balance of $169,181.35, and Investors Syndicate demanded that the city call as many bonds as that sum would redeem.

The city went to the Marion County Circuit Court for a declaratory judgment about whether it could be required to retire the bonds, and was ordered to do so and to provide Investors Syndicate with an accounting. Fairmont appealed.

W.Va.Code, 8–16–9, *et seq.*, grants municipal corporations authority to issue revenue bonds to pay for the construction, repair, improvement or acquisition of public works after enacting an ordinance describing the work and the estimated cost, ordering the bonds to be issued, and establishing a fund to repay the debt from revenues generated by the project, W.Va.Code, 8–16–7.

Fairmont's ordinance [1] has this provision about bond redemption in the bond form set out in ordinance:

The bonds of the issue of which this bond is one may be redeemed by said city prior to maturity in whole, or from time to time in part when selected by lot, upon any interest payment date on or after August 1, 1965, upon terms of par and accrued interest plus a redemption premi-

---

1. *"Section 2.* That for the purpose of paying the cost of said public works project there shall be and there are hereby authorized to be issued Public Works Revenue Bonds of said city in the aggregate principal amount of Eight Hundred Thousand Dollars ($800,000), dated August 1, 1955, consisting of eight hundred bonds numbered consecutively 1 to 800, inclusive, of the denomination of $1,000, bearing interest at the coupon rate of four and one-quarter per cent (4¼) per annum, payable semi-annually on February 1 and August 1 of each year, and maturing on August 1, 1985, *provided, however, all of said bonds may be redeemed by said city prior to maturity in whole, or from time to time in part when selected by lot, upon any interest payment date on or after August 1, 1965,* upon terms of par and accrued interest plus a redemption premium of three per cent of the principal amount thereof ...." (Emphasis supplied.)

um of three per cent of the principal amount thereof, provided, that at least thirty days before any interest payment date upon which such redemption is to be made a notice of intention so to redeem, and identifying the bonds so to be redeemed, shall have been filed at the places at which principal and interest are payable, and such notice shall have been published at least once in a newspaper or financial journal of general circulation published in the City of New York, New York, not less than thirty days prior to the redemption date. Notice of such redemption having been so given and funds for the redemption having been duly provided, such bonds shall on such redemption date cease to bear interest.

The ordinance continues:

Whenever there is in the sinking fund a surplus in the sum of $10,000 or more in excess of the amount required to pay the interest becoming due within the ensuing twelve months it *shall* be used for the purchase of bonds ...:

The city shall designate a date which shall be not less than fifteen days nor more than twenty days from the time said date is designated, at which time it will receive sealed tenders of bonds and set upon said offers at an open meeting of its Board of Directors. Notice of the time and place of receiving such sealed tenders shall be published at least once not less than ten days before such date in a newspaper or financial journal of general circulation published in the City of New York, New York. The entire available surplus for the retirement of bonds computed as aforesaid shall be used to purchase bonds offered at the lowest price .... (Emphasis supplied.)

The statute that authorizes revenue bonds, W.Va.Code, 8–16–12, says:

Such revenue bonds ... *shall* mature at such time or times, not exceeding forty years, as may be determined by the ordinance or ordinances authorizing the issuance of such bonds. Such bonds *may* be made redeemable before maturity, *at the option of the municipality* or

municipalities issuing the same, *to be exercised by said board*, at not more than the par value thereof, and at a premium of not more than five percent, under such terms and conditions as may be fixed by the ordinance .... W.Va. Code, 8–16–12 (in part, emphasis supplied).[2]

■ Only the municipality, whose board can exercise the option to redeem, can call the bonds before maturity. *Accord, Neighbors of Woodcraft v. Rupert*, 51 Idaho 215, 4 P.2d 360 (1931); *Adams v. Pritchard*, 88 Idaho 325, 399 P.2d 252 (1965). It cannot, by its ordinance, give the redemption decision to the bondholders.

A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied. Syllabus Point 2, *State ex rel. Charleston v. Hutchinson*, 154 W.Va. 585, 176 S.E.2d 691 (1970).

*Accord, Brenham v. German American Bank*, 144 U.S. 173, 12 S.Ct. 559, 36 L.Ed. 390 (1892), wherein the United States Supreme Court recognized that if a municipal corporation did not have power to issue bonds, even a bona fide holder cannot recover upon them.

■ *State ex rel. Charleston v. Hutchinson, supra*, is analogous to this case. A Charleston ordinance gave the city authority to use surplus in the "Parking System Revenue Fund" in a manner not spelled out in the statute. We found that the mention in the statute of certain uses of the fund precluded the city from adding other uses.

In *Rogers v. South Charleston*, 163 W.Va. 285, 256 S.E.2d 557 (1979), we noted that a city board of park and recreation must act in the best interests of the public and municipality. The board's legislatively granted power to do everything necessary to effectuate the purposes of the article did not include the power to grant an option to

**2.** That provision has since been amended to alter the percentages.

purchase public lands. That type provision precluded a succeeding board from determining whether the terms of the agreement were beneficial to the public at the time of sale. We said that leaving the option to purchase to the optionee was contrary to legislative intent.

> Succeeding governing bodies are deprived of the discretion conferred upon them by statute to determine if the sale will benefit the public and are bound by the actions of a past body, taken perhaps when circumstances were different. (Footnote omitted.) *Rogers v. South Charleston, supra* 163 W.Va. at 292, 256 S.E.2d, at 562.

The *Rogers* option is like this option of bondholders to require the city to purchase bonds. At that time, mandatory pre-maturity redemption may not have been in the city's best interest. We do believe this case is distinguishable from *Wheelis v. Phenix City,* 241 Ala. 310, 2 So.2d 776 (1941); *Maricopa County v. Osborn,* 60 Ariz. 290, 136 P.2d 270 (1943); *J.K. Mullen Investment Co. v. Arvada,* 128 Colo. 227, 261 P.2d 714 (1953); *Willard v. Honolulu,* 323 F.Supp. 666 (D.Haw.1971); *Snyder v. Board of Trustees,* 144 Ky. 256, 137 S.W. 1057 (1911); and *Carlson v. Helena,* 39 Mont. 82, 102 P. 39, 17 Ann.Cas. 1233 (1909), because in each of them legislation allowed mandatory redemption before maturity. We do not have comparable legislative dictates.

Another reason for our decision is that when the sinking fund had an accumulation sufficient to retire all outstanding bonds, then no further payments by Fairmont would need be made.[3] The sinking fund earns money on funds put into it. The larger Fairmont's balance, the more money was being earned, and the sooner the public could be freed from paying the tolls that fed the fund.

That portion of Fairmont's ordinance that requires the city to call bonds when a certain surplus exists in the sinking fund is invalid. The ordinance makes its provisions severable and, therefore, only this particular part is invalid. Syllabus Point 8, *Brewer v. Point Pleasant,* 114 W.Va. 572, 172 S.E. 717 (1934).

The circuit court also ordered, at Investors Syndicate's request, an accounting. W.Va.Code, 8–16–20 requires municipalities that issue revenue bonds to install and maintain a proper system of accounting, to have the accounts properly audited, and to make the auditor's report available to taxpayers, residents or bondholders.

The city is obligated by statute and ordinance to provide the information and should make its audits available to the bondholder. It need not supplement those materials with additional data.

Reversed.

---

3. "No further payments need be made into said sinking fund when and so long as the amount therein is sufficient to retire all the bonds then outstanding plus the amount of interest due and thereafter to become due on said bonds on or prior to such retirement." Ordinance No. 247, Section 5, in part.